### VICTOR A. KOURY v. PAIGE B. FOLLO.

(Filed 12 January, 1968.)

**1. Trial § 21—**

On motion to nonsuit, plaintiff's evidence must be considered in the light most favorable to him, giving him the benefit of every favorable inference which may be reasonably drawn therefrom, and discrepancies, if any, in plaintiff's evidence must be disregarded.

**2. Appeal and Error § 59—**

In passing upon an exception to the refusal to nonsuit, the Supreme Court will give plaintiff the full benefit of all relevant evidence introduced, even though some evidence was improperly admitted over objection.

**3. Physicians and Surgeons § 20— Evidence held sufficient to show that deafness of child was caused by negligence.**

Plaintiff's evidence tended to show that defendant pediatrician prescribed injections of Strep-Combiotic, a drug containing streptomycin, for plaintiff's nine-month old baby girl for treatment of a cold and bronchitis, that prior to the treatment the child was in normal health, including hearing, and that afterwards the child became deaf. The label on each container of the drug stated "Not for Pediatric Use," and instructions accompanying the drug amplified the warning. Plaintiff's expert testimony was to the effect that the damage to the hearing nerve is a known hazard of the drug and frequently occurs above a certain dosage, and that the dosage prescribed to the child was in the expert's opinion approximately double the upper safe limit for a child of comparable weight, and was approximately five times the dosage recommended for such child according to a rule stated in a textbook on pediatrics. *Held:* Plaintiff's evidence was sufficient to justify a finding by the jury that plaintiff's child was made deaf by defendant's negligence in prescribing and administering the drug, and nonsuit was improperly entered.

**4. Physicians and Surgeons § 11—**

A physician or surgeon may be held liable only for such damage as proximately results from his failure to possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess, or his failure to exercise reasonable care and diligence in his application of his knowledge and skill to the patient's case, or his failure to use his best knowledge in his treatment and care of the patient.

KOURY *v.* FOLLO.

**5. Trial § 18—**

It is the function of the jury to determine the credibility and weight of the evidence and to determine the facts upon which the plaintiff's right to recover must stand or fall.

**6. Physicians and Surgeons § 11—**

A physician who holds himself out as a specialist in the field of pediatrics is required to bring to the treatment of an infant a degree of knowledge, not required of a general practitioner, as to the probable effect of drugs upon so young a patient.

**7. Same—**

A specialist in a given field of medical practice is not, in the absence of an extraordinary contract or representation, a guarantor of the success of his treatment.

**8. Physicians and Surgeons § 16—**

Mere proof that a patient does not survive a treatment prescribed or administered by a physician or surgeon, whether a specialist or general practitioner, or that the patient emerges from the treatment in an untoward condition, is insufficient to impose liability therefor, the doctrine of *res ipsa loquitur* being inapplicable.

**9. Physicians and Surgeons § 11—**

It is negligence for a physician to prescribe as a remedy for an illness of a nine-month old baby a drug which he knows, or in the exercise of reasonable care should know, may produce a different or worse ailment without advising the parents of the possibility of adverse results from the use thereof, and especially so where possible danger from the drug's use would be unknown to the parents.

**10. Appeal and Error § 48—**

The admission in evidence of printed documents, incompetent as hearsay, will not be disturbed where no objection is interposed to their introduction.

**11. Evidence §§ 33, 50—**

Excerpts from medical textbooks and similar publications are incompetent as hearsay evidence to prove the correctness of a statement of fact or theory therein.

**12. Evidence § 17—**

The rule relating to hearsay evidence is not applicable where the purpose of offering an extra-judicial statement is to prove that the statement was made and that the litigant should have reasonably known, under the circumstances, that the statement was made.

**13. Same; Evidence § 50—**

It is not error in a malpractice action for injury to a child to admit in evidence a manufacturer's label on a drug container stating "Not Safe for Pediatric Use" nor to admit printed instructions to the same import, since they are relevant to prove the existence of a warning which the physician should have seen and taken into account.

APPEAL by plaintiff from *Brock, S.J.,* at the 20 March 1967 Civil Session of GUILFORD, Greensboro Division.

The plaintiff sues for damages, consisting of loss of services and additional expenses incurred and to be incurred, by reason of the alleged negligent treatment of his infant daughter, Susan Ann Koury, by the defendant, a physician specializing in pediatrics.

The complaint alleges that the child, then nine months of age, was a patient of the defendant for the treatment of an ailment diagnosed by him as asthmatic bronchitis and, in the course of such treatment, the defendant prescribed for her and caused her to be given by injections excessive dosages of a drug known as Strep-Combiotic, which caused the child to become permanently and totally deaf, she having had normal hearing prior to such treatment by the defendant. The complaint alleges that the defendant knew, or should have known, that Strep-Combiotic was hazardous for use in the treatment of a child of the age of Susan Ann; that he knew, or should have known, the amount of the drug prescribed by him was excessive for a child of her age; and that he caused the drug to be given to the child without disclosing to the plaintiff or to the mother of the child the danger incident to its use, though he knew, or should have known, that it could cause deafness, and that no immediate emergency existed requiring its use. The complaint further alleges that by reason of the deafness of the child the plaintiff has incurred, and will in the future be required to incur, substantial additional expenses for the child's care and education.

The defendant, in his answer, admits that Susan Ann, who was nine months old at the time of the treatment in question, had been his patient for routine office visits and examinations since she was one month old, and that the defendant was familiar with her general physical condition. The answer admits that the child had no illnesses and that her growth and development had been normal from the time of her first visit to the defendant until the treatment in question. The answer also admits that the child was the defendant's patient at the time in question, having been admitted on his advice to the hospital for treatment for an ailment which he had diagnosed as asthmatic bronchitis and possible pneumonia, and that at the time of her admission into the hospital he prescribed an injection of Strep-Combiotic in the amount of 1.5 cubic centimeters each 12 hours, that five of such injections were so administered and that each 1.5 cubic centimeters of the drug contains 375 milligrams of streptomycin. The answer denies that in so treating the child the defendant was negligent, and denies that any deafness which the child may now have was caused by any negligent act or omission of the defendant.

At the conclusion of the plaintiff's evidence a judgment of nonsuit was entered upon the motion of the defendant. From this the

plaintiff appeals, the granting of the motion and entry of the judgment being the only assignments of error.

The testimony of the plaintiff and his wife was to the effect that prior to the admission of their little girl to the hospital, pursuant to the defendant's recommendation, on 29 June 1965, at which time she was slightly over nine months of age, she was normal in all respects, including her hearing; she responded normally to her mother's voice and was easily aroused from her sleep by the ringing of the telephone and other household noises. They testified that shortly after her return from the hospital they noted that she was inattentive to sounds and was not aroused from her sleep by excessive noises. The testimony of medical experts thereupon consulted by the parents, and who examined the child, was to the effect that she is permanently and, for all practical purposes, totally deaf, this being a nerve deafness.

The mother testified that the child developed a cold with fever on 28 June. The mother called the defendant who visited the child in her home, prescribed medication and instructed the mother to call him the following morning if the child was not substantially improved. No improvement having resulted, the child's mother took her to the defendant in his office. He recommended hospitalization in order that the child and her parents might rest better.

Upon the child's admission to the hospital she was, pursuant to the defendant's orders, placed in a croupette, and certain procedures, including the injections of Strep-Combiotic, were followed. An x-ray examination did not reveal the presence of pneumonia. On the second day after admission her bronchial condition had improved and she was discharged, upon the defendant's order, into her parents' care.

Dr. Stewart, found by the court to be an expert in the use of antibiotics in the treatment of disease, testified that Strep-Combiotic is a combination of penicillin and streptomycin, containing 375 milligrams of streptomycin in each 1.5 cubic centimeter. He further testified that damage to the hearing apparatus is a known hazard of streptomycin and occurs frequently above a certain dosage, the upper safe limit of dosage being, normally, 40 milligrams of streptomycin per kilogram of body weight in each 24 hours. (Susan Ann's weight at the time of her hospitalization was something less than 10 kilograms, so that, according to Dr. Stewart's testimony, the upper safe limit of dosage was 400 milligrams of streptomycin in 24 hours. The dosage prescribed for Susan Ann by the defendant was 1.5 cubic centimeters of Strep-Combiotic each 12 hours, amounting to 750 milligrams of streptomycin in each 24 hour period.) In response to hypothetical questions, proper in form, Dr. Stewart testified that, in his opinion, the dosage of Strep-Combiotic prescribed

by the defendant and administered pursuant to his orders could have caused the child's deafness.

Dr. Shahane Taylor, stipulated to be an expert in eye, ear, nose and throat practice, testified that Susan Ann had a total nerve deafness when he examined her approximately seven weeks after the above described treatment. In his opinion, anything that would be toxic to a nerve could affect the nerve of hearing, including a disease or a medicine.

At the time of the child's hospitalization, Strep-Combiotic was put up by the manufacturer in powder form in a vial. Sterile water was added by the nurse, pursuant to directions, in order to make the proper proportions. Thereupon, the prescribed 1.5 cubic centimeters would be drawn out of the container into a syringe and injected into the muscle of the patient.

The label on the bottle, in which the Strep-Combiotic was packaged by the manufacturer and received by the hospital, stated on one side of the bottle, in red capital letters, "NOT FOR PEDIATRIC USE." On the other side of the bottle the label stated in blue letters:

"USUAL DOSAGE
Adults: 2 cc (0.5 gram streptomycin,
400,000 units penicillin G procaine)
once or twice daily.
SEE LITERATURE."

Nelson's Textbook of Pediatrics is a standard textbook in that field of medicine. Passages from it were introduced in evidence by the plaintiff. These include a statement of "Clark's Rule" for estimating dosages for children in reference to the adult dosage of a drug. Under this rule, which the textbook states is more reliable when applied to children over two years of age, a child's dosage is determined by multiplying the adult dose by a fraction, of which the child's weight in pounds is the numerator and 150 is the denominator. (Under this rule, Susan Ann's weight being approximately 20 pounds, the child's dosage would be approximately 13 per cent of the adult dosage. The dose prescribed by the defendant for this child was 75 per cent of the usual dosage stated on the manufacturer's label on the bottle.)

Seven months prior to the birth of Susan Ann, her mother developed a rash upon the upper part of her body. At that time there was an epidemic of rubella in North Carolina. The mother was at that time teaching school and she missed no time from her work. She had no fever with the rash. On the advice of her physician, given

by telephone, he being in another city, she took a measles vaccine, it being administered by a nurse in the office of another doctor. (The record does not indicate that this rash was diagnosed as rubella or German measles.)

Strep-Combiotic was regularly stocked and in common use on the pediatrics floor of the hospital at the time of the defendant's treatment of Susan Ann.

The plaintiff also offered evidence of expenses incurred by him as the result of the deafness of Susan Ann and further evidence as to the cost of the education of a deaf child.

The adverse examination of Dr. Follo by the plaintiff shows that, in his opinion, it is difficult if not impossible to determine whether a child is totally deaf or has normal hearing in the first nine months after birth. At the time of the treatment in question, he had no information that the hearing of Susan Ann was or was not normal. He was aware that streptomycin can cause damage to the eighth cranial nerve which relates to hearing, this and other adverse reactions being, in his opinion, rare. He had previously had no adverse "side effects" from it. He did not regard the drug as dangerous in the dosage he prescribed. He did not warn the child's parents of possible adverse reactions from its use. Other pediatricians in Greensboro, where this occurrence took place, were then using Strep-Combiotic for children as young as nine months of age. The dosage he prescribed was the standard dosage used by pediatricians in Greensboro. At the time he prescribed its use for Susan Ann, he did not know that the manufacturer's label upon the container bore the statement, "Not for Pediatric Use," nor did he then know that the manufacturer's literature, packaged with containers of Strep-Combiotic contained the statement:

> "Strep-Combiotic is contraindicated for pediatric use because there is a danger that dosages calculated to provide adequate amounts of Penicillin will, in some instances, supply excessive amounts of Streptomycin to infants and children."

*Douglas, Ravenel, Hardy & Crihfield for plaintiff appellant.*
*Jordan, Wright, Henson & Nichols and William B. Rector, Jr.*
*McLendon, Brim, Brooks, Pierce & Daniels by C. T. Leonard, Jr., for defendant appellee.*

LAKE, J. For the purposes of an appeal from a judgment of nonsuit, the plaintiff's evidence must be considered by us in the light most favorable to him and he must be given the benefit of every favorable inference which can reasonably be drawn there-

from. Strong, N. C. Index, Trial, § 21. Discrepancies, if any, in the plaintiff's evidence must be disregarded. He must be given the full benefit of all relevant evidence introduced, even though improperly admitted over objection seasonably entered. *Supply Co. v. Ice Cream Co.,* 232 N.C. 684, 61 S.E. 2d 895; *Ballard v. Ballard,* 230 N.C. 629, 55 S.E. 2d 316; 88 C.J.S., Trial, § 244.

When so considered, the plaintiff's evidence is sufficient to support, though not to compel, these findings: The plaintiff took his nine months old baby to the defendant, a specialist in pediatrics, for treatment of a bad cold and bronchitis. The baby's illness could not be classified as an emergency. The defendant prescribed and caused to be administered to the baby five injections of a drug, the manufacturer of which caused to be stamped on each container in red letters, "NOT FOR PEDIATRIC USE," and caused to be packaged with each container of the drug an amplification and explanation of the warning against use for children. The defendant, knowing the drug contained streptomycin and that streptomycin may impair the nerve controlling the hearing apparatus, prescribed for this 20 pound infant a dosage, for each injection, equal to 75 per cent of the upper limits of the dosage stated on the manufacturer's label on the bottle to be the usual dosage for adult patients. This dosage was approximately double the upper safe limit of dosage for a 20 pound child, in the opinion of the plaintiff's expert witness, and approximately five times the dosage for such child computed according to "Clark's Rule" contained in a standard textbook on pediatrics. Prior to her treatment with this drug, the baby had normal hearing. The use of the drug prescribed by the defendant, in the dosage prescribed by him, caused the child to become totally deaf. In consequence of the deafness of his child, the plaintiff has incurred and must hereafter incur expense, beyond that which is normal, for the care and education of his child.

We are, of course, not to be understood as holding or implying that the evidence compels such findings or that the foregoing paragraph is a factually correct account of what occurred in and as a result of the treatment of the plaintiff's child by the defendant. The defendant has not yet had an opportunity to present evidence to show a different factual situation or to show that his treatment of the plaintiff's child was in accordance with the standard of care required of a physician prescribing drugs for administration to a nine months old baby suffering from acute bronchitis. What we do hold is that the plaintiff's evidence, considered in accordance with the above stated rule, is sufficient, if found by a jury to be true, to support findings as above stated and, therefore, the court erred in granting the defendant's motion for judgment of nonsuit. It is for the

jury to determine the credibility and weight to be given the evidence and, after hearing the evidence of the defendant as well as that of the plaintiff, to determine the facts upon which the plaintiff's right to recover must stand or fall. Strong, N. C. Index, Trial, § 18.

We again reaffirm the rule stated by Higgins, J., speaking for this Court in *Hunt v. Bradshaw*, 242 N.C. 517, 88 S.E. 2d 762:

> "A physician or surgeon who undertakes to render professional services must meet these requirements: (1) He must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) he must use his best judgment in the treatment and care of his patient. [Citations omitted.] If the physician or surgeon lives up to the foregoing requirement he is not civilly liable for the consequences. If he fails in any one particular, and such failure is the proximate cause of injury and damage, he is liable."

The question for us upon this appeal is whether there is substantial evidence in the record before us to support, though not to require, a finding by a jury that the plaintiff's child was made deaf by the defendant's failure to fulfill the second of these requirements.

The defendant is not a general practitioner. He is a specialist in the field of pediatrics. Consequently, he was required to bring to the treatment of the plaintiff's baby a degree of knowledge as to the probable effect of a drug upon so young a patient not required of a general practitioner of medicine. *Belk v. Schweizer*, 268 N.C. 50, 149 S.E. 2d 565; 41 Am. Jur., Physicians and Surgeons, § 90.

Of course, not even a specialist in a given field of medical practice is, in the absence of an extraordinary contract or representation, a guarantor of the success of his treatment or its freedom from adverse consequences to the patient. Mere proof that a patient does not survive a treatment prescribed or administered by a physician or surgeon, whether a general practitioner or one practicing in a special field, or that the patient emerges from the treatment in a worse condition than before it was administered, is not sufficient to impose liability for such consequence upon the physician or surgeon, for the doctrine of *res ipsa loquitur* does not apply. *Starnes v. Taylor*, 272 N.C. 386, 158 S.E. 2d 339, decided this day; *Belk v. Schweizer*, *supra; Galloway v. Lawrence*, 266 N.C. 245, 145 S.E. 2d 861; *Hunt v. Bradshaw, supra; Nash v. Royster*, 189 N.C. 408, 127 S.E. 356. In the record before us, however, the plaintiff's evidence is amply sufficient, if true, to support a finding that the defendant prescribed for his tiny patient a powerful drug without reading, or in disregard

of, express warnings printed by the manufacturer upon the container and upon a leaflet packaged with each container of the drug. It is sufficient, if true, to show that he prescribed a dosage far in excess of that recommended for so small a child by a standard textbook in his own special field of medicine. It was his duty to exercise reasonable care, not only in his diagnosis of his patient's disease, but also in ascertaining the probable effects of the drug he prescribed and to observe appropriate precautions in its use. *Reed v. Church,* 175 Va. 284, 8 S.E. 2d 285.

Obviously, rules stated in medical textbooks, like those stated in other textbooks, may be in error or may be disproved by subsequent discoveries in the field. At most, they are but the opinion of the writer, who may be less well informed in the field than is the defendant. The same is true of the opinion expressed on the witness stand by the plaintiff's expert witness and the opinion expressed on the label by the manufacturer. Upon the motion for judgment of nonsuit, however, the plaintiff's evidence is to be taken as true and interpreted in the light most favorable to him. So interpreted, it is sufficient to justify the jury in finding that the defendant knew, or should have known, that to administer this powerful drug in so large a dose to so small a patient could well result in the precise catastrophe which such evidence indicates did result therefrom. The illness for which the drug was so administered was not such as to create an emergency calling for hazardous measures. It was an illness from which most children have suffered and from which most of them have recovered in due time without such treatment.

In *Sharpe v. Pugh,* 270 N.C. 598, 155 S.E. 2d 108, we said:

> "[I]t would be negligence if defendant prescribed, as a remedy for illnesses for which it was neither necessary nor suited, a drug which he knew or should have known was dangerous, without advising and warning Brenda's [a small child] parents of the possible or probable injurious effects from the use thereof."

This record does not show that Strep-Combiotic was not suited to the treatment of the bronchitis from which the plaintiff's baby was suffering. On the contrary, it is clear from the record that its use speedily cured that ailment. A physician may not, however, with immunity from liability, use for the treatment of a relatively minor ailment a remedy which he knows, or in the exercise of reasonable care should know, may produce a different ailment or disability far worse than the original disease. Before using such a drug upon a tiny child, in the absence of an emergency, the physician should make

known to the parents of the child the possibility of adverse results which he knows or, in the exercise of care commensurate with his specialty, should know, is a reasonably possible result of the use of the drug. The plaintiff's evidence shows that the defendant did not so inform the parents of this little girl and thus give them the opportunity of an informed election between incurring the risk of prolonged bronchitis and possible pneumonia on the one hand and incurring the risk of total and permanent deafness of their child on the other.

With reference to the duty of the defendant to inform the plaintiff, or the child's mother, of the risk inherent in the use of this drug upon this patient, the present case is distinguishable from *Starnes v. Taylor, supra*. There, the patient was referred by his family doctor to the defendant surgeon for the purpose of having made the examination which was made, and the injury to the esophagus, while unlikely, was the kind of injury a patient, as well as a surgeon, could be expected to consider as a possible result of the insertion of the esophagoscope. Here, the danger was a hidden one which the defendant knew, or should have known, was unlikely to be suspected by the child's parents, and was one which expert testimony indicates to have been far more than a mere possibility when the dose is excessive. Furthermore, in this case, to warn the parent of the possible adverse result would in no way induce nervousness in the patient so as to decrease the likelihood of successful treatment.

The defendant contends in his brief that the court below erred in admitting in evidence the manufacturer's label upon the container of Strep-Combiotic and the excerpts from Nelson's Textbook on Pediatrics. There are two independently sufficient reasons why this argument is unavailing upon this appeal. (1) Upon a motion for judgment of nonsuit, all of the plaintiff's evidence relevant to the issue must be given full probative value, even though erroneously admitted. *Supply Co. v. Ice Cream Co., supra; Ballard v. Ballard, supra.* (2) The record indicates objections by the defendant to questions to witnesses concerning the contents of these printed documents, but not to the introduction of the documents themselves. There was no objection to the introduction of the adverse examination of the defendant in which he testified concerning the contents of the label and of the manufacturer's printed statement packaged with each bottle of Strep-Combiotic.

While the competency of this evidence is not before us upon this appeal, it is apparent that the same question is likely to arise upon the new trial which will be the result of our decision. We, therefore, direct attention to the principles of law by which the admissibility

of this evidence and the purpose for which it may be considered by the jury are to be determined.

It is well settled in this State, and in other jurisdictions, that excerpts from medical textbooks, and similar publications, are incompetent as evidence to prove the correctness of a statement of fact or theory therein. *State v. Summers,* 173 N.C. 775, 92 S.E. 328; *Tilghman v. R. R.,* 171 N.C. 652, 89 S.E. 71; *Lynch v. Manufacturing Co.,* 167 N.C. 98, 83 S.E. 6. See also, *Sloan v. Light Co.,* 248 N.C. 125, 102 S.E. 2d 822; *Lutz Industries, Inc., v. Dixie Home Stores,* 242 N.C. 332, 88 S.E. 2d 333. Statements in such textbooks and documents are, in the final analysis, but the opinions of the author or his statement of facts observed by him or reported by others. They are not made under oath, the writer is not subject to cross examination and the opinion is not stated in response to a hypothetical question setting forth facts in evidence in the case on trial. Consequently, when offered as evidence of the truth of the statement made therein, the publication is objectionable both under the Hearsay Rule and under the rules applicable to opinion testimony by expert witnesses.

The same principles and objections apply to the admission in evidence of a statement by a manufacturer, printed upon or packaged with a container of his product, when such statement is offered to prove the truth of the statement.

The Hearsay Rule does not apply where the purpose of offering the extra-judicial statement is not to prove the truth of the statement, but merely to prove the fact that it was made, and that the circumstances under which it was made were such as should reasonably have made it known to the litigant. *Wilson v. Indemnity Corp.,* 272 N.C. 183, 158 S.E. 2d 1. The display of a red flag bearing the word "DANGER," a shouted warning or a printed warning by a person other than the witness testifying thereto, may be shown, not to prove the fact of danger, but to prove the giving of a warning which the person in question should have seen or heard and taken into account. For this purpose, the label on the bottle of Strep-Combiotic was properly admitted in evidence. It is not proof that the drug was unsafe for use upon a child. See *Salvo v. Leland Stanford Jr. University Board of Trustees,* 154 Cal. App. 2d 560, 317 P. 2d 170. It is evidence of a warning which the physician disregards at his peril, and his disregard of it is relevant upon the issue of his use of reasonable care, where other evidence shows the drug is, in fact, dangerous to a child.

Upon this record, the judgment of nonsuit was improperly entered.

Reversed.