HOMER M. SHARPE, Administrator of the Estate of BRENDA ADELINE SHARPE v. DR. V. WATSON PUGH

No. 7310SC211

(Filed 20 March 1974)

1. **Evidence § 33— warning accompanying drug — inadmissible to prove truth of warning**

   In a wrongful death action based on the alleged negligence of defendant in prescribing a drug for plaintiffs' minor child, the trial court did not err in excluding from evidence descriptive literature including warnings prepared by or for the manufacturer of the drug in question since the literature was inadmissible to prove the truth of the warning contained therein.

2. **Physicians and Surgeons, Etc. §§ 15, 17— wrongful death — prescription of drug — no evidence of standard of care required**

   Even if the drug manufacturer's warnings were admissible in this wrongful death prosecution to show that defendant doctor knew, or should have known, of the dangerous propensities of the drug, there was a complete lack of evidence to establish the standard of care which defendant was required to adhere to in order for the jury to determine that he prescribed the drug for plaintiffs' child without exercising reasonable care and diligence, or that defendant failed to use his best judgment in his treatment of deceased.

3. **Physicians and Surgeons, Etc. § 17— prescription of drug — insufficiency of evidence of negligence**

   While the evidence in a wrongful death action was sufficient to support a jury finding that defendant prescribed and administered to plaintiffs' child a drug knowing it could cause aplastic anemia, the disease from which the child died, and that defendant failed to warn plaintiffs of this dangerous side effect, the evidence was insufficient to support a jury finding that the drug was prescribed as a remedy for illnesses for which it was neither necessary nor suited.

4. **Physicians and Surgeons, Etc. § 20— wrongful death action — failure to show causal connection between negligence and death**

   Even if the evidence was sufficient to establish a *prima facie* case of negligence on the part of defendant in prescribing and administering a drug to plaintiffs' child or in failing to warn plaintiffs about the effects of the drug, the evidence failed to show a causal connection between the negligence and the child's contraction of aplastic anemia from which her death resulted.

APPEAL by plaintiff from *Bone, Judge,* 16 October 1972 Session of Superior Court held in WAKE County.

This wrongful death action was before the North Carolina Supreme Court on the question of the sufficiency of the pleadings in *Sharpe v. Pugh,* 270 N.C. 598, 155 S.E. 2d 108 (1967).

The case came on for trial by jury on the issues of malpractice raised by the pleadings, but at the close of the evidence Judge Bone directed a verdict against the plaintiff administrator. Viewed in the light most favorable to plaintiff, the evidence adduced at trial tended to show:

Homer and Sarah Sharpe (Mr. and Mrs. Sharpe) were the parents of the decedent, Brenda Adeline Sharpe (Brenda), who was two years old in June 1963. Defendant was the child's pediatrician from the date of her birth until January 1964. He treated Brenda on numerous occasions between 18 June 1963 and 17 January 1964, and on three occasions during that interval of time, prescribed the drug chloromycetin to cure viral infections contracted by Brenda. The chloromycetin was administered by Mrs. Sharpe as prescribed by defendant.

During the course of treatment, no blood tests or other tests were administered to Brenda until 8 January 1964, after she had developed red spots, or petechiae, over her entire body. The spots became worse and on 17 January 1964 Brenda was referred to Rex Hospital in Raleigh for further tests. Thereafter she was referred to Memorial Hospital in Chapel Hill where she was treated by Dr. Campbell White McMillan who diagnosed her illness as aplastic anemia.

Dr. McMillan treated Brenda at Memorial Hospital over the course of three and a half months, during which time she was administered hormones and given several blood transfusions. On 8 May 1964, Brenda became unconscious and was taken to Memorial Hospital where she died the next morning. The postmortem examination revealed the cause of death to have been massive intracranial bleeding, a known complication resulting from aplastic anemia.

Concerning aplastic anemia, Dr. McMillan testified by deposition that: "Aplastic anemia should be regarded as a descriptive term rather than a specific disease process. . . . It is a descriptive word of a condition. . . . [W]hich really refers to a set of findings rather than an underlying cause." In response to a hypothetical question, not objected to by defendant, Dr. McMillan testified that chloromycetin might have caused the aplastic anemia condition which led to the bleeding which caused Brenda's death. However, on cross-examination, he testified that "[t]he general situation at the present time regarding this disease is that the fundamental causes of it have to be re-

garded as unknown. When I diagnose a condition of what I have described as aplastic anemia, then it would not be possible to specifically determine with certainty any particular cause for it." The incidence of aplastic anemia occurring as a result of the administration of chloromycetin at the lowest estimate was one case for every sixty thousand courses of therapy.

Dr. Joseph H. Callicott, Jr., testified by deposition that he conducted a postmortem examination on the body of Brenda Sharpe. The examination revealed that the bone marrow content showed a disease in the blood forming cells, and in Dr. Callicott's opinion, the cause of Brenda's death was intracranial bleeding resulting from aplastic anemia. In response to a hypothetical question, not objected to by defendant, Dr. Callicott testified that, "It is my opinion that it is possible that the aplastic anemia could have resulted from administration of chloromycetin. . . ."

At the end of the testimony of plaintiff's witnesses, plaintiff offered into evidence exhibits 14, 15 and 16, descriptive literature packaged with chloromycetin, and exhibits 23, 24 and 25, booklets prepared by the manufacturer of chloromycetin for distribution by salesmen, the identification and authenticity of exhibits 23, 24 and 25 having been stipulated to by the defendant. Objections by defendant to the admission of the exhibits were sustained. Plaintiff offered into evidence without objection copies of pages from the 1963 and 1964 Physicians' Desk Reference.

At the close of all the evidence, defendant moved for a directed verdict pursuant to G.S. 1A-1, Rule 50, on the ground that plaintiff had failed to offer sufficient evidence of negligence. The trial judge allowed the motion and plaintiff appealed.

*Boyce, Mitchell, Burns & Smith, by F. Kent Burns and Eugene Boyce, for plaintiff appellant.*

*Maupin, Taylor & Ellis, by W. W. Taylor, Jr., and Richard C. Titus, and Manning, Fulton & Skinner, by Howard E. Manning, for defendant appellee.*

BRITT, Judge.

Plaintiff assigns as error the exclusion from evidence of plaintiff's exhibits 14, 15, 16, 23, 24 and 25 and testimony as to their availability to doctors generally, and the dismissal of

Sharpe v. Pugh

the action by directed verdict. We find no merit in either assignment.

[1]  The excluded exhibits were descriptive literature prepared by or for the manufacturer of chloromycetin and contained the following:

"WARNING

"Serious and even fatal blood dyscrasias (aplastic anemia, hypoplastic anemia, thrombocytopenia, granulocytopenia) are known to occur after the administration of chloramphenicol [chloromycetin]. Blood dyscrasias have occurred after both short term and prolonged therapy with this drug. Bearing in mind the possibility that such reactions may occur, chloramphenicol should be used only for serious infections caused by organisms which are susceptible to its antibacterial effects. Chloramphenicol should not be used when other less potentially dangerous agents will be effective, or in the treatment of trivial infections such as colds, influenza, or viral infections of the throat, or as a prophylactic agent.

"Precautions: It is essential that adequate blood studies be made during treatment with the drug. While blood studies may detect early peripheral blood changes, such as leukopenia or granulocytopenia, before they become irreversible, such studies cannot be relied on to detect bone marrow depression prior to development of aplastic anemia."

In *Koury v. Follo*, 272 N.C. 366, 158 S.E. 2d 548 (1968), the court held that literature of the type excluded in this case, when offered to prove the truth of the statement, is inadmissible under the hearsay rule; however, it is admissible to show the giving of a warning by the manufacturer. We quote from the opinion (p. 376) : "It is not proof that the drug was unsafe for use upon a child. (Citation.) It is evidence of a warning which the physician disregards at his peril, and his disregard of it is relevant upon the issue of his use of reasonable care, where other evidence shows the drug is, in fact, dangerous to a child."

In *Hunt v. Bradshaw*, 242 N.C. 517, 521-522, 88 S.E. 2d 762, 765 (1955), the court said:

"A physician or surgeon who undertakes to render professional services must meet these requirements: (1)

He must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) he must use his best judgment in the treatment and care of his patient. (Citations.) If the physician or surgeon lives up to the foregoing requirements he is not civilly liable for the consequences. If he fails in any one particular, and such failure is the proximate cause of injury and damage, he is liable."

Reaffirmed in *Koury v. Follo, supra.*

[2] Clearly the trial court did not err in excluding the exhibits to prove the truth of the warning. Assuming, *arguendo,* that they were admissible to show that defendant knew, or should have known, of the dangerous propensities of chloromycetin, we are of the opinion that there was a complete lack of evidence to establish the standard of care which defendant was required to adhere to in order for the jury to determine that he prescribed the drug chloromycetin for Brenda without exercising reasonable care and diligence, or that defendant failed to use his best judgment in his treatment of Brenda. This case does not fall within the scope of the rule that where the physician's lack of due care is so gross as to be within the comprehension of laymen and to require only common knowledge and experience to understand and judge it, that expert evidence as to the standard of care the physician was required to meet is not necessary. See *Groce v. Myers,* 224 N.C. 165, 29 S.E. 2d 553 (1944). Rather, the standard of care in the treatment and prescription of the drug chloromycetin is peculiarly within the province of the experts, and in this case there was no expert testimony to establish the standard of care.

The only evidence we have discovered in the record which would indicate when chloromycetin should be prescribed and administered is the precautionary statement included in the warning quoted above, and that evidence was inadmissible to prove the truth of the statement.

[3] We are not unmindful of the statement made in the opinion in the former appeal of this case that defendant may have been negligent if he failed to advise or warn Brenda's parents with reference to the dangers inherent in the use of chloromycetin, where defendant prescribed the drug as a remedy for

Sharpe v. Pugh

illness for which it was neither necessary nor suited, knowing that the drug was dangerous. However, we are of the opinion that while the evidence was sufficient to support a jury finding that the defendant prescribed and administered chloromycetin, knowing it *could* cause aplastic anemia, and that defendant failed to warn Mr. and Mrs. Sharpe about this dangerous side effect, the evidence was insufficient to support a jury finding that the drug was prescribed as a remedy for illnesses for which it was neither necessary nor suited. As to the appropriateness of prescribing chloromycetin to treat viral infections, there is a total paucity of expert testimony or any other testimony. Once again the only evidence in this regard is the warning appearing on the face of the excluded exhibits and they were not admissible for that purpose.

[4] Assuming, *arguendo,* that plaintiff's evidence was sufficient to establish a prima facie case of negligence—that defendant was negligent in prescribing and administering chloromycetin for and to Brenda, or that he was negligent in failing to warn the Sharpes about chloromycetin—we think the evidence failed to show a causal connection between the negligence and Brenda's contraction of aplastic anemia. The testimony of plaintiff's witness Dr. McMillan included the following: "Based upon my experience and knowledge in the medical field, I have not been able to determine the causes of the condition described as aplastic anemia. And the general situation at the present time regarding this disease is that the fundamental causes of it have to be regarded as unknown. When I diagnose a condition of what I have described as aplastic anemia, then it would not be possible to specifically determine with certainty any particular cause for it. * * * I would have to say that in any case of aplastic anemia that I discovered that the cause could be from so many different sources that it would be impossible to specify a specific source. * * * Brenda Sharpe, might have developed or could have developed aplastic anemia from other sources. * * * I see no way to jump from the question of association to the question of a clear cause."

Plaintiff argues that the evidence from medical experts showing that Brenda's contraction of aplastic anemia *could* or *might* have been caused from taking chloromycetin was sufficient to take the case to the jury on the question of causation. Similar argument relating to medical testimony was rejected in *Lee v. Stevens,* 251 N.C. 429, 434, 111 S.E. 2d 623, 627

(1959) ; we quote from the opinion: " '* * * "We may say with certainty that evidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict and should not be left to the jury." ' "

For the reasons stated, the judgment appealed from is

Affirmed.

Judges PARKER and HEDRICK concur.