ROBERT F. BROOKS, Plaintiff v. WAL-MART STORES, INC., Defendant

No. COA99-430

(Filed 29 August 2000)

**1. Appeal and Error— preservation of issues—failure to refer to order in notice of appeal—issue preserved under § 1-278**

An issue concerning the dismissal of Wal-Mart's codefendants in an action arising from a prescription greater than the intended dose was properly before the Court of Appeals pursuant to N.C.G.S. § 1-278 despite Wal-Mart's failure to refer to the order in its notice of appeal where Wal-Mart registered its objection at trial and plaintiff was put on notice that Wal-Mart intended to question the dismissal on appeal; the order was interlocutory and not immediately appealable because contribution may be determined in an independent action; and the order involved the merits of the suit and necessarily affected the final judgment in that Wal-Mart was rendered solely liable.

**2. Contribution— joint tortfeasors—settlement with some— determination of good faith**

The Court of Appeals adopts the totality of circumstances approach of *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 617 N.E.2d 737, for determining whether a settlement with only some of the persons liable for a tort was reached in good faith under the Uniform Contribution among Tortfeasors Act, N.C.G.S. § 1B-1. Courts in states which have adopted the Act have generally agreed that a hearing is required; the Mahathiraj approach involves consideration of all available relevant facts and places both the type of proceeding to conduct and the decision of whether the settlement is in good faith in the sound discretion of the trial court.

**3. Contribution— joint tortfeasors—settlement with some— determination of good faith—specific procedure and conclusion**

In an action against a doctor, his practice, and a pharmacy arising from a prescription where the pharmacy contended that plaintiff's settlement with only the doctor and his practice was in bad faith, the court did not abuse its discretion in its choice of procedure by taking counsel for the other parties at their word rather than allowing the remaining codefendant to examine coun-

BROOKS v. WAL-MART STORES, INC.

[139 N.C. App. 637 (2000)]

sel under oath or abuse its discretion by concluding that the settlement was in good faith.

**4. Appeal and Error— preservation of issues—claim not asserted prior to appeal**

In a negligence action arising from a prescription, Wal-Mart did not preserve for appellate review the issue of whether the trial court should have granted its motions for directed verdict and JNOV on the grounds that its pharmacist had filled the prescription as directed by a physician where Wal-Mart did not assert that claim prior to appeal.

**5. Appeal and Error— preservation of issues—objection at trial—different grounds on appeal**

Defendant Wal-Mart did not preserve for appellate review its contention regarding the court's instruction in a negligence action arising from a prescription where Wal-Mart objected at trial, but the grounds asserted before the trial court were markedly different from those raised on appeal.

**6. Appeal and Error— preservation of issues—expert testimony**

Defendant Wal-Mart's contention in a negligence action arising from a prescription that testimony by a pharmacist was erroneously based upon a national standard was not properly before the Court of Appeals in light of Wal-Mart's failure to move to strike the standard of care testimony, its presentation on cross-examination of essentially the same testimony, and its further failure to object to the tender of the witness as an expert or to request a voir dire to explore the basis for his opinion.

Appeal by defendant from judgment filed 2 June 1998, order filed 3 June 1998, and order and judgment filed 29 June 1998 by Judge Russell G. Walker, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 16 February 2000.

*Alexander, Ralston, Speckhard & Speckhard, L.L.P., by Stanley E. Speckhard, for plaintiff-appellee.*

*Smith, Helms, Mulliss & Moore, L.L.P., by James G. Exum, Jr., Caroline H. Lock, John J. Korzen, and Amie Flowers Carmack, for defendant-appellant Wal-Mart Stores, Inc.*

**BROOKS v. WAL-MART STORES, INC.**

[139 N.C. App. 637 (2000)]

JOHN, Judge.

Defendant Wal-Mart Stores, Inc. (Wal-Mart) appeals judgment entered upon jury verdict in favor of plaintiff Robert F. Brooks. We conclude the trial court committed no error.

Pertinent facts and procedural history include the following: Defendant James L. Deterding, M.D. (Dr. Deterding), an employee of defendant Carolina Kidney Associates, P.A. (CKA), began treating plaintiff in October 1991. On 11 September 1992, Dr. Deterding prescribed the drug Prednisone (the prescription) for plaintiff's loss of kidney function. Dr. Deterding intended that the prescription reflect a dosage of eighty milligrams (80 mg) per day.

Plaintiff presented the prescription to pharmacist Kimberly Stutts (Stutts) at Wal-Mart's Asheboro, North Carolina, store on Saturday, 12 September 1992. According to Stutts, the prescription indicated plaintiff was to take 80 mg of Prednisone four times per day, a daily total of three hundred twenty milligrams (320 mg). Stutts stated she telephoned CKA to inquire whether 320 mg was the intended dosage, and that a female answered the call, placed Stutts on hold, and subsequently returned and confirmed the dosage level as 320 mg. Stutts thereupon filled the prescription at 320 mg per day, and it was subsequently refilled at the same level on 26 September 1992 by pharmacist Charles Adams (Adams) in Wal-Mart's Greenville, South Carolina, pharmacy.

In later testimony, Dr. Ronald Garber, a nephrologist and president of CKA, maintained CKA was "never" open on Saturdays, that "no one answer[ed the office phone] line" on Saturdays, and that an answering machine activated on Friday afternoons received all weekend calls and directed the caller to contact an answering service if the "call [wa]s of an urgent nature."

On 28 September 1992, plaintiff was admitted to a hospital emergency room in Greenswood, South Carolina, and diagnosed with thrush, a fungal infection of the throat. Plaintiff continued ingesting 320 mg daily for twenty-three days until a 5 October 1992 follow-up visit with Dr. Deterding revealed plaintiff had been taking four times the amount of Prednisone intended by Dr. Deterding.

Plaintiff subsequently contracted nocardia, a bacterial infection of the lungs, and aspergillosis, a fungal infection of the brain, resulting in numerous operations and hospital stays. In a videotaped deposition taken 24 April 1998 and presented at trial, Dr. David Robirds

testified plaintiff had suffered permanent kidney failure and would "require dialysis for the rest of his life."

Plaintiff filed the instant suit 11 September 1995, alleging negligence by Dr. Deterding in writing and by Wal-Mart in dispensing the prescription, and claiming such negligence resulted in injuries to plaintiff which were "permanent and disabling." Dr. Deterding and CKA answered jointly 27 November 1995, denying negligence and alleging plaintiff had been contributorily negligent in failing to follow Dr. Deterding's verbal instructions to take 80 mg of Prednisone per day.

Dr. Deterding and CKA also cross-claimed against Wal-Mart, asserting that any negligence on the part of Dr. Deterding or CKA was insulated by the negligence of Wal-Mart. By answer filed 28 November 1995, Wal-Mart denied negligence, pleaded plaintiff's contributory negligence in bar of his claim, and cross-claimed for contribution and indemnity against Dr. Deterding and CKA.

Trial of the action commenced 7 May 1998. At the close of plaintiff's evidence, each defendant moved for directed verdict pursuant to N.C.G.S. § 1A-1, Rule 50(a) (1999), which motions were denied by the trial court 18 May 1998. On 19 May 1998, plaintiff's attorney informed the trial court a settlement (the settlement) had been reached with Dr. Deterding and CKA in the amount of $10,000.00. Following a hearing, the court entered orders dismissing with prejudice plaintiff's claims, as well as Wal-Mart's cross-claims, against Dr. Deterding and CKA (the 19 May 1998 order).

The jury verdict returned 22 May 1998 stated plaintiff was injured by the negligence of Wal-Mart and was not contributorily negligent. The jury awarded plaintiff $2,500,000.00 in compensatory damages and, upon finding Wal-Mart's negligence was accompanied by aggravated conduct, awarded plaintiff $1.00 in punitive damages. The trial court entered judgment 2 June 1998 reflecting the verdict and taxing costs to Wal-Mart.

Wal-Mart moved for judgment notwithstanding the verdict (JNOV), see N.C.G.S. § 1A-1, Rule 50(b) (1999), for new trial, see N.C.G.S. § 1A-1, Rule 59(a) (1999), and to alter or amend the judgment, see N.C.G.S. § 1A-1, Rule 59(e) (1999). The trial court granted the latter motion 3 June 1998 so as to allow credit for the $10,000.00 settlement with Dr. Deterding and CKA against plaintiff's compensatory damage award, the judgment thereby reflecting that plaintiff was entitled to recover $2,490,000.00 from Wal-Mart. Wal-Mart's

**BROOKS v. WAL-MART STORES, INC.**

[139 N.C. App. 637 (2000)]

remaining motions were denied 29 June 1998, and it timely appealed both the denial of its motions and the court's 2 June 1998 judgment. Wal-Mart subsequently retained its current appellate counsel to pursue the appeal in lieu of trial counsel.

[1] Wal-Mart originally asserted thirty-four assignments of error, presently condensed into four issues for our review. Wal-Mart first attacks the trial court's 19 May 1998 order, arguing the trial court erred by finding therein that the settlement was reached in good faith and by failing to conduct an "evidentiary hearing" on that issue.

Preliminarily, we note plaintiff objects that Wal-Mart did not "serve Dr. Deterding or CKA with its motion for a new trial . . . or with notice of appeal," and did not take notice of appeal from the 19 May 1998 order. *See* N.C.R. App. P. 3(d) (Rule 3(d)) ("notice of appeal . . . shall designate the judgment or order from which appeal is taken"). Accordingly, plaintiff continues, the 19 May 1998 order is not properly before this Court for review.

However, plaintiff cites no authority supporting his position that failure to serve Dr. Deterding and CKA "precludes a new trial," the ultimate remedy sought by Wal-Mart on appeal, and we thus do not discuss plaintiff's contention in that regard. *See Metric Constructors, Inc. v. Industrial Risk Insurers*, 102 N.C.App. 59, 64, 401 S.E.2d 126, 129 ("[b]ecause the appellee cites no authority for this argument, it is deemed abandoned"), *aff'd*, 330 N.C. 439, 410 S.E.2d 392 (1991); *cf.* N.C.R. App. P. 28(b)(5) (assignments of error for which no authority is cited will be taken as abandoned).

Further, although Wal-Mart's notice of appeal did not reference the 19 May 1998 order as required by Rule 3(d), N.C.G.S. § 1-278 (1999) provides "another avenue by which an appellate court may obtain jurisdiction to review an interlocutory order" absent compliance with Rule 3(d). *Floyd and Sons, Inc. v. Cape Fear Farm Credit*, 350 N.C. 47, 51, 510 S.E.2d 156, 158-59 (1999).

Appellate review pursuant to G.S. § 1-278 is proper under the following conditions:

(1) the appellant must have timely objected to the order; (2) the order must be interlocutory and not immediately appealable; and (3) the order must have involved the merits and necessarily affected the judgment.

*Gaunt v. Pittaway*, 135 N.C. App. 442, 445, 520 S.E.2d 603, 606 (1999).

All three prerequisites have been met herein. First, Wal-Mart registered its objection at trial to the 19 May 1998 order when entered, thus preserving the issue for appellate review. *See* N.C.R. App. P. 10(b)(1). Further, in its notice of appeal, Wal-Mart specifically appealed denial of its new trial motion, predicated in part upon the trial court's failure to prohibit the settlement and to conduct an evidentiary hearing upon whether it had been reached in good faith. In short, plaintiff indisputably was put on notice that Wal-Mart intended to question on appeal the 19 May 1998 dismissal of Dr. Deterding and CKA from the case, and was not prejudiced by Wal-Mart's failure to include the 19 May 1998 order in its formal notice of appeal. *See Floyd*, 350 N.C. at 52, 510 S.E.2d at 159 ("it is quite clear from the record that plaintiffs sought appeal" of order not specifically appealed pursuant to Rule 3(d)); *see also Smith v. Insurance Co.*, 43 N.C. App. 269, 274, 258 S.E.2d 864, 867 (1979) (mistake in designating judgment appealed from should not result in loss of appeal if intent to appeal from specific judgment may fairly be inferred from notice and appellee is not misled by mistake).

Second, the orders dismissing Dr. Deterding and CKA were interlocutory orders, as they were

> made during the pendency of [the] action [and] d[id] not dispose of the case, but le[ft] it for further action by the trial court in order to settle and determine the entire controversy.

*Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). Interlocutory orders are not immediately appealable

> unless the order deprives the appellant of a substantial right which he will lose if the order is not reviewed before the final judgment.

*Floyd*, 350 N.C. at 51, 510 S.E.2d at 158.

In the case *sub judice*, Wal-Mart's potential right of contribution from Dr. Deterding and CKA was indisputably affected by dismissal of each from the case. However, the right to contribution is "adequately protected by exception to entry of the interlocutory order," *J&B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 6, 362 S.E.2d 812, 815 (1987), in that any claim of contribution may be independently determined in a proceeding separate from that resolving the issue of negligence. The 19 May 1998 order thus was interlocutory and not immediately appealable, *see Floyd*, 350 N.C. at 51, 510 S.E.2d at 158 (order immediately appealable only if substantial right would

**BROOKS v. WAL-MART STORES, INC.**

[139 N.C. App. 637 (2000)]

be lost absent appeal before final judgment), and Wal-Mart is entitled to appellate review thereof under G.S. § 1-278

> incident to an appeal from a final judgment or order [if the] intermediate orders "involv[ed] the merits and necessarily affect[ed] the judgment,"

*In re Foreclosure of Allan & Warmblod Const. Co.*, 88 N.C. App. 693, 696, 364 S.E.2d 723, 725, *disc. review denied*, 322 N.C. 480, 370 S.E.2d 222 (1988) (citing G.S. § 1-278).

The 19 May 1998 order deprived Wal-Mart of its claims against Dr. Deterding and CKA, and effectively rendered Wal-Mart solely liable on any judgment in favor of plaintiff. The 19 May 1998 order thereby "involv[ed] the merits [of the suit] and necessarily affect[ed] the [final] judgment." G.S. § 1-278; *see Floyd*, 350 N.C. at 51, 510 S.E.2d at 159 (order depriving party of one of its claims involved merits and affected judgment). Accordingly, the 19 May 1998 order is properly presented for our review incident to Wal-Mart's appeal of the final judgment, *see* G.S. § 1-278; *see also In re Allan & Warmblod*, 88 N.C. App. at 696, 364 S.E.2d at 725, referenced in Wal-Mart's notice of appeal, *see* Rule 3(d).

**[2]** We therefore turn to the Uniform Contribution among Tort-Feasors Act (the Act), N.C.G.S. §§ 1B-1-1B-6 (1999), to consider the propriety of the trial court's dismissal of Dr. Deterding and CKA from the case. The Act provides:

> [e]xcept as otherwise provided in this Article, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

G.S. § 1B-1(a). However,

> [w]hen a release or a covenant not to sue or not to enforce judgment is given *in good faith* to one of two or more persons liable in tort for the same injury or the same wrongful death:

> (1) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,

(2) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

G.S. § 1B-4 (emphasis added).

The Act is silent as to what constitutes "good faith" and as to the procedure by which it may be determined whether a good faith settlement has been reached, and our courts have not previously addressed the question. Wal-Mart's appeal thus presents an issue of first impression.

Although courts in states which have adopted the Act have generally agreed a hearing is required to resolve whether a settlement has been reached in good faith under the Act, those courts remain divided in prescribing the nature of the requisite hearing. *See* Lewis A. Kornhauser & Richard L. Revesz, *Settlements Under Joint and Several Liability*, 68 N.Y.U. L. Rev. 427, 443 (1993) [hereinafter Kornhauser & Revesz, *Settlements*]; *see also Copper Mount., Inc. v. Poma of Am., Inc.*, 890 P.2d 100, 105 (Colo. 1995) (courts are "sharply divided as to which is the appropriate test").

Three distinct approaches have emerged. Under the first, courts are directed to "scrutinize the substantive adequacy of the settlement," Kornhauser & Revesz, *Settlements* at 443, by examining factors such as

a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, . . . a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial[,] . . . the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.

*Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 698 P.2d 159, 166-67 (Cal. 1985).

The second approach "involve[s] only a procedural inquiry about the absence of collusion between the plaintiff and the settling defendant." Kornhauser & Revesz, *Settlements* at 443; *see also Noyes v. Raymond*, 548 N.E.2d 196, 199 (Mass. App. Ct. 1990) (lack of good faith "includes collusion, fraud, dishonesty, and other wrongful conduct," but circumstance of low settlement amount in comparison to plaintiff's estimate of damages by itself is "not material"), and *Copper*

*Mount.*, 890 P.2d at 108 ("a settlement is reached in 'good faith' in the absence of collusive conduct").

By contrast, courts adopting the third approach

hold that determination of good faith should be left to the discretion of the trial court based upon all relevant facts available, and that, in the absence of an abuse of that discretion, the trial court's findings should not be disturbed.

*Velsicol Chemical Corp. v. Davidson*, 811 P.2d 561, 563 (Nev. 1991); *see also Dubina v. Mesirow Realty Development*, 719 N.E.2d 1084, 1088 (Ill. App. Ct. 1999) (good faith determination is matter within discretion of trial court); *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 617 N.E.2d 737, 741 (Ohio Ct. App. 1992) (same), *jurisdictional motions overruled*, 612 N.E.2d 1245 (Ohio 1993).

Further,

[t]he type of hearing that should be conducted to produce the facts necessary to determine whether a settlement was made in good faith is [also] committed to the discretion of the trial court.

*Readel v. Towne*, 706 N.E.2d 99, 104 (Ill. App. Ct. 1999); *see also Mahathiraj*, 617 N.E.2d at 742.

The first approach has been criticized

both for its potentially negative impact on the policy encouraging settlement and for the additional burdens it creates for trial courts in conducting evidentiary hearings . . . .

*Copper Mount.*, 890 P.2d at 105 (citations omitted). Additionally, the statute at issue in the case originally promulgating that approach, *Tech-Bilt*, 698 P.2d 159,

specifically required that a court conduct a hearing on the issue of good faith at the request of an interested party,

*Mahathiraj*, 617 N.E.2d at 741. The *Tech-Bilt* court thus was delineating requisite factors to be considered during the statutorily prescribed hearing. However, North Carolina's version of the Act, G.S. § 1B-4, contains no hearing requirement. In the absence thereof, we deem it inappropriate to direct consideration by our trial courts of a specified set of factors on each occasion the good faith nature of a settlement is questioned. *Accord Mahathiraj*, 617 N.E.2d at 741.

In any event, we conclude the third view accords best with our previous expressions of the purpose of the Act, *i.e.*, that it "contemplates that settlements are to be encouraged," *Wheeler v. Denton*, 9 N.C. App. 167, 171, 175 S.E.2d 769, 772 (1970), and that "it is . . . desirable that settlements be made promptly and with finality," *Matthews v. Hill*, 2 N.C. App. 350, 354, 163 S.E.2d 7, 10 (1968).

Further, the third approach provides maximum flexibility to our trial courts and is "more workable," *Mahathiraj*, 617 N.E.2d at 741, in that

> the court considers the totality of the circumstances to determine if a settlement has been reached in good faith,

*id.*; *see also Velsicol Chemical*, 811 P.2d at 563 (court should base decision on "all relevant facts available"). Thus, a trial court may, without being specifically obligated to do so, consider any of the factors delineated in *Tech-Bilt*, or examine whether the settlement was collusive as required by the second approach if such inquiry is warranted by the facts of the individual case. However, mandating that the court perform the foregoing functions in every case would indisputably be disruptive of, and discouraging to, settlement.

As the Massachusetts Appeals Court has written,

> [t]he goal of encouraging settlements may be achieved only to the extent that motions for discharge based upon settlements are routinely allowed, with extended hearings on the question of good faith the exception. If it were otherwise, a party seeking to avoid trial by settling a claim could rarely achieve that objective; either the issue of good faith would be the subject of a full trial, or . . . a defendant who settles with a plaintiff may, nevertheless, be forced to stand trial on the merits of the tort claim. Faced with such prospects, a defendant would have little incentive to enter into a settlement.

*Noyes*, 548 N.E.2d at 199.

In short, we adopt the "totality of the circumstances" approach announced in *Mahathiraj*, 617 N.E.2d at 741, which involves consideration of all available relevant facts, *see Velsicol Chemical*, 811 P.2d at 563, and "places [both] the decision of whether or not a settlement is made in good faith," *Mahathiraj*, 617 N.E.2d at 741, and what "type of proceeding [to] conduct to determine good faith in an individual case," *id.* at 742, in the sound discretion of the trial court.

**BROOKS v. WAL-MART STORES, INC.**

[139 N.C. App. 637 (2000)]

Accordingly, the trial court's determination of whether a settlement was made in good faith pursuant to G.S. § 1B-4 may be reversed only if the

> court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.

*State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). Moreover,

> [t]he mere showing that there has been a settlement is not enough to show there has been a lack of good faith. [Finally, t]he burden of showing a lack of good faith is upon the party asserting it.

*Wheeler*, 9 N.C. App. at 171, 175 S.E.2d at 772.

[3] In the case *sub judice*, Wal-Mart claims the settlement between plaintiff and Dr. Deterding and CKA was not in good faith and that Wal-Mart should have been allowed

> to examine counsel for the settling parties under oath (outside the presence of the jury) regarding the nature, terms, and timing of the settlement.

When the settlement was announced to the trial court, Wal-Mart sought permission to *"voir dire* both attorneys on the record" for the purpose of determining "whether or not [it] wish[ed] to make a motion with respect to the good faith issues of the settlement." Although assuring the court it did not intend to "cast . . . aspersions" on counsel, Wal-Mart argued it

> should be entitled to inquire . . . [into] the nature of the settlement, how it arose, how it came to be, its timing, in order to establish a record sufficient for your Honor to make findings other than the representations of counsel in argument . . . .

Counsel for Dr. Deterding and CKA thereupon related to the court, without being placed under oath, the circumstances surrounding the settlement:

> As the court knows, . . . three weeks ago, [plaintiff] made a settlement demand of $50,000.00 to my clients. We had rejected that and made a counter offer of $25,000.00, and, as the trial progressed, with the incurring of additional defense costs, my client decided not to—not to keep the $25,000.00 there, and it went down, your Honor . . . .

Plaintiff's counsel concurred and added that he believed

the case against [CKA] and the doctor is a weak one, in light of the testimony that has developed. There would have been considerable costs that could have been taxed to my client, even if we win against Wal-Mart, from Dr. Deterding and [CKA] . . . . So, I just felt that it was in the best interest of my client to [settle].

The trial court then stated:

I can say from my sitting here listening to the evidence over the last two weeks that the—in my opinion, your [plaintiff's] case as against Dr. Deterding and [CKA] has been—has been going south all along, and I have no question in my mind that, knowing the three of you, and having been in the courtroom with you for two weeks, that there is good reason for this renegotiation and good reason for this settlement.

I'm satisfied without anything further that it's in good faith, . . . but I'm used to having officers of the court tell me the truth, and I don't think I've been told anything other than the truth here this morning, and I'm just not willing to go through an exercise of having one or both of these lawyers put on the witness stand to be examined . . . when, from all I have seen and heard in the trial of this case, I'm satisfied that this is a good faith settlement . . . .

Although denying Wal-Mart's request to examine counsel for plaintiff and Dr. Deterding and CKA under oath, the court allowed Wal-Mart to continue its argument on the good faith issue. Wal-Mart emphasized that

the timing of this matter [together with] the nature with which the plaintiff ha[d] conducted the presentation of his opening *voir dire* and evidence,

indicated the settlement was not made in good faith. Moreover, according to Wal-Mart, plaintiff had "no . . . good reason to settle" after winning the directed verdict motions, and that part of plaintiff's "long-term trial strategy" was

to get rid of the doctor and [CKA] at some point during the trial in a way that leaves the jury with no doubt in its mind that his entire focus, his entire case, has not been the doctor, has not been [CKA], but [has been] Wal-Mart all along . . . . And trial strategy or not, your Honor, . . . that prejudices Wal-Mart . . . .

**BROOKS v. WAL-MART STORES, INC.**

[139 N.C. App. 637 (2000)]

The trial court subsequently entered the 19 May 1998 order concluding the settlement was in good faith and dismissing Dr. Deterding and CKA as parties. Given the trial court's familiarity with the case, parties, and attorneys; the lack of evidence no more substantive than mere intimation of wrongdoing on the part of plaintiff and the settling defendants; and the burden of Wal-Mart to make a showing of lack of good faith, *see Wheeler*, 9 N.C. App. at 171, 175 S.E.2d at 772; we cannot say the trial court's 19 May 1998 order was "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision," *Hennis*, 323 N.C. at 285, 372 S.E.2d at 527.

In addition, we perceive no abuse of discretion in the procedure utilized by the trial court to reach its decision. *See Readel*, 706 N.E.2d at 104. In the words of the Illinois Court of Appeals, Wal-Mart's claim that opposing counsel should have been questioned under oath

> is not well taken. Forcing opposing counsel to testify as witnesses during trial is an extreme measure which would have been wholly unwarranted here. The [trial] court was thoroughly familiar with this litigation, and [opposing] counsel . . . described to the court, in detail and on the record, how, when, and under what terms the settlements were achieved.
>
> The court had no reason not to take these attorneys at their word.

*Lewis v. Illinois Cent. R. Co.*, 600 N.E.2d 504, 512 (Ill. App. Ct. 1992), *appeal denied*, 610 N.E.2d 1265 (Ill. 1993).

We note that the North Carolina Rules of Professional Conduct (the Rules) mandate that "[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal." N.C.R. Prof. Cond. 3.3(a)(1). The comment to this Rule explains that

> an assertion purporting to be on the lawyer's own knowledge, as in . . . a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.

N.C.R. Prof. Cond. 3.3 cmt. Failure to comply with the Rules "is a basis for invoking the disciplinary process." N.C.R. Prof. Cond. 0.2.

In light of the factors noted in *Lewis* and counsel's ethical responsibilities set out in the Rules, we hold the trial court under the circumstances *sub judice* did not abuse its discretion in "tak[ing] the[]

attorneys [for Dr. Deterding and CKA and for plaintiff] at their word," *Lewis*, 600 N.E.2d at 512, and denying Wal-Mart's request to examine them under oath.

**[4]** Wal-Mart next contends it was error for the trial court to deny its directed verdict and JNOV motions because

> [a] plaintiff has no cause of action for negligence against a pharmacy when its pharmacist filled a prescription as directed by a physician.

Wal-Mart cites this Court's opinion in *Batiste v. Home Products Corp.*, 32 N.C. App. 1, 231 S.E.2d 269, *disc. review denied*, 292 N.C. 466, 233 S.E.2d 921 (1977), as support for its proposition. However, whether Wal-Mart's formulation correctly states our law or indeed is applicable to the instant case in which a critical factual issue was whether Stutts in actuality filled the prescription as written by Dr. Deterding, is beyond the scope of our review because Wal-Mart has failed to preserve this issue for appeal.

As grounds for its directed verdict motion at the close of plaintiff's evidence, Wal-Mart asserted "plaintiff ha[d] failed to carry the burden of proof [on his negligence claim] as to medical proximate cause," *i.e.*, as to whether the Prednisone overdose was the cause of the injuries plaintiff claimed at trial, and had not introduced sufficient evidence to support his punitive damages claim. At the close of all evidence, Wal-Mart renewed its motion for directed verdict "on all the grounds previously moved," but added that "no credible evidence" had been presented that the South Carolina standard of care had been violated in conjunction with refilling of plaintiff's prescription at the Greenville, South Carolina, Wal-Mart, nor was there any credible evidence that "Stutts did not call the prescribing physician's office to confirm the prescription." Wal-Mart's post-trial JNOV motion renewed its directed verdict motion "on the same grounds."

At no point prior to appeal, therefore, did Wal-Mart assert plaintiff's claim was barred because its pharmacists had filled the prescription as written by Dr. Deterding. Wal-Mart thus        ·

> cannot assert this on appeal because it failed to raise this issue before the trial court on its motions for directed verdict and judgment notwithstanding the verdict.

*Smith v. Carolina Coach Co.*, 120 N.C. App. 106, 114, 461 S.E.2d 362, 367 (1995); *see also Broyhill v. Coppage*, 79 N.C. App. 221, 225, 339

S.E.2d 32, 36 (1986) (motion for directed verdict must state grounds therefor, G.S. § 1A-1, Rule 50(a), "and grounds not asserted in the trial court may not be asserted on appeal"), and N.C.R. App. P. 10(b)(1) (to preserve question for appellate review, party must have presented to the trial court motion "stating the specific grounds for the ruling . . . desired"). We therefore decline to address Wal-Mart's second argument.

[5] Similarly, we do not consider the third contention advanced on appeal by Wal-Mart, maintaining the trial court

> erred in instructing the jury regarding loss of use of part of the body as a partial measure of damages, because the instruction was not supported by the law or by the evidence.

Preliminarily, we grant Wal-Mart's motion to amend the record to incorporate into its assignment of error related to this issue the record and page line references to the challenged portion of the jury charge. Given our disposition of the alleged error, moreover, we do not discuss plaintiff's contention that Wal-Mart has abandoned this assignment of error.

It is well established that

> [a] party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, *stating distinctly that to which he objects and the grounds of his objection* . . . .

N.C.R. App. P. 10(b)(2) (emphasis added). Although Wal-Mart objected at trial to the jury instruction at issue, the grounds asserted before the trial court were markedly different from those raised on appeal.

The following exchange occurred during the charge conference:

> [Wal-Mart's counsel]: [The court should not give an instruction on] loss of use of part of the body . . . . I think there's no permanent partial disability here of 80 percent of the back or [a] cut off finger.

> [Plaintiff's counsel]: [Plaintiff] lost part of the skull.

> [Wal-Mart's counsel]: That's a scar issue. I think you get the disfigurement or scar for the skull, and I think you get permanent injury on—

[Plaintiff's counsel]: [Plaintiff] lost part of—lost his kidneys.

[Wal-Mart's counsel]: I hope you're jesting. He did lose his kidneys, but that's a permanent injury. It's not part of loss of use of the body.

Although Wal-Mart acknowledged at oral argument that its objection at trial may not have been entirely "clear," it is apparent from the foregoing that Wal-Mart's stated basis for opposing the jury instruction at issue was that plaintiff's loss of kidney function should have been characterized as a permanent injury rather than loss of use of part of the body. By contrast, Wal-Mart argues in its appellate brief that evidence linking Wal-Mart's alleged negligence to plaintiff's kidney failure "did not rise above the level of mere possibility and conjecture," such that the instruction should not have been submitted to the jury.

Therefore,

[a]lthough defendant objected to the instructions, [it] did not object on the ground upon which [it] now asserts error. . . . As the objections at trial in no way supported the defendant's assignment of error on appeal, we conclude that defendant did not preserve this error for appellate review pursuant to Rule 10(b)(2).

*State v. Francis*, 341 N.C. 156, 160, 459 S.E.2d 269, 271 (1995).

**[6]** Finally, Wal-Mart contends the trial court erred by allowing Greensboro, North Carolina, pharmacist Joseph Franklin Burton (Burton) to testify regarding the standard of care applicable to Adams, Wal-Mart's Greenville, South Carolina, pharmacist who refilled plaintiff's prescription. Again, this argument is not properly before us.

Wal-Mart asserts "Burton was not competent to testify" as to the applicable Greenville, South Carolina, standard of care and that his testimony "revealed a total dearth of knowledge of or familiarity with the practice of pharmacy in that community," such that his testimony should have been excluded.

As a general rule, testimony of a qualified expert is required to establish the standard of care and breach thereof in medical malpractice cases,

*Heatherly v. Industrial Health Council*, 130 N.C. App. 616, 625, 504 S.E.2d 102, 108 (1998), as in the instant case. Further,

[t]he competency of a witness to testify as an expert in the particular matter at issue is addressed primarily to the sound discretion of the trial court, and its determination is not ordinarily disturbed by the reviewing court.

*Food Town Stores v. City of Salisbury*, 300 N.C. 21, 37, 265 S.E.2d 123, 133 (1980).

N.C.G.S. § 90-21.12 (1999) provides in pertinent part:

the defendant shall not be liable . . . unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

Pharmacists fall within the definition of "health care provider." N.C.G.S. § 90-21.11 (1999).

In order for plaintiff's . . . witness[] to qualify as [an] expert[] with regard to the [pharmacy] standard of care applicable to [Adams], plaintiff was required under G.S. [§] 90-21.12 to lay a foundation showing the witness[] w[as] familiar with the standard of practice (1) among [pharmacists] with similar training and experience, (2) who were situated in the same or similar communities, (3) at the time plaintiff's [prescription was re-filled.]

*Haney v. Alexander*, 71 N.C. App. 731, 735, 323 S.E.2d 430, 433 (1984), *cert. denied*, 313 N.C. 329, 327 S.E.2d 889 (1985).

Burton testified on direct examination by plaintiff that he received his pharmacy degree from the University of North Carolina at Chapel Hill, was currently licensed to practice pharmacy in North Carolina, and had worked in the Greensboro, North Carolina, area as a pharmacist for the past 28 years. Wal-Mart interposed no objection to the tender by plaintiff of Burton as "an expert in the field of pharmacy."

In addition, Burton was questioned by counsel for Dr. Deterding and CKA as follows:

Q: Sir, let me ask you if you are familiar with the standards of practice for pharmacists who had training and experience similar

to that of Charles Adams who practiced pharmacy in Greenville, South Carolina, or similar communities, in September 1992?

. . . .

A: Yes, I believe I am.

Wal-Mart's objection to the question was overruled and Wal-Mart interjected no subsequent motion to strike the testimony. *See State v. Beam*, 45 N.C.App. 82, 84, 262 S.E.2d 350, 352 (1980) ("failure of counsel to move to strike . . . an answer, even though the answer *is* objected to, results in a waiver of the objection").

Burton then went on to express the opinion that Adams violated the applicable standard of care by refilling plaintiff's prescription in that

once the prescription was in his hands, his responsibility is no different from any pharmacist seeing that prescription for the first time. His obligation, first and foremost, is, again, to the patient's welfare. He should know that that dose created a situation of potential harm to the patient, and . . . the ultimate responsibility . . . falls . . . to him . . . to not dispense . . . a dose as excessive as that.

Although the foregoing testimony was received over Wal-Mart's objection, Wal-Mart interposed no motion to strike the testimony, *see id.*, nor a request to *voir dire* Burton pursuant to N.C.G.S. § 8C-1, Rule 705 (1999) concerning "the underlying facts or data," *id.*, supporting his opinion.

Thereafter, Wal-Mart's counsel cross-examined Burton in pertinent part as follows:

Q: And you also testified that you are familiar with the practice of pharmacy as to its standards in Green[ville], South Carolina. Did I understand you to say that?

A: No. I think what I said was that the standards of care of a pharmacist, no matter where they are practicing, are, basically, the same, that they would not vary that much pertaining to certain areas of standard of practice.

Q: So, . . . are you unfamiliar with the standard of care in Green[ville], South Carolina?

A: I don't think I'm unfamiliar with the standard of care in Green[ville], South Carolina, because I don't feel that that standard of care is any different from any other area that a pharmacist might practice in.

. . . .

Q. How do you know [the standard of care is] not different from what you do in Greensboro, North Carolina?

A. Well, I—when I'm referring to the standard of care in Green[ville], South Carolina, or Asheboro, North Carolina, or Greensboro, North Carolina, I'm regarding—I'm referring to what a pharmacist's responsibility to the patient is. . . .

. . . . .

Q: You don't really know whether the standard of care in Green[ville], South Carolina, is similar to or different from Greensboro, North Carolina, do you?

A: Yes. I—again, my opinion is that the standard of care would not be different in Green[ville], South Carolina, or any other location that a pharmacist is practicing.

When asked by Wal-Mart the basis for his statement that the standard of care did not differ, Burton replied:

The basis is that pharmacists attend pharmacy school and are taught standards of care and standards of practice in relation to your responsibility to the patient, and those pharmacists then go out from pharmacy school and may work in any varied—a variety of practice settings, and it doesn't matter whether that's in one state or another . . . . Still, the basic criteria for your standard of care is what's in the patient's best interest.

Wal-Mart further cross-examined Burton about the filling of the prescription:

Q. . . . [Is] a pharmacist . . . left to his or her own judgment as to whether or not to fill a prescription after it's been confirmed by a prescriber's office . . . ?

. . . .

A. . . . The pharmacist at that point must exercise his or her own judgment as to whether that dosage, even if confirmed by the prescriber, would be harmful to the patient, and, if determining that

that dosage would be harmful to the patient, has an obligation not to fill the prescription.

Regarding the 320 mg dosage, Burton also testified during cross-examination that "it was so excessive as to not be a gray area," and that a pharmacist should have refused to fill a Prednisone prescription in that amount even if confirmed by the prescriber's office. Further, Burton reiterated, "there's no gray area when you get to 320 milligrams a day."

Burton also admitted he was not familiar with South Carolina statutes or administrative regulations governing the practice of pharmacy, that he had not attended any seminars discussing such statutes or regulations, and that he had not discussed the instant case with any South Carolina pharmacist.

By failing to move to strike Burton's standard of care testimony elicited by Dr. Deterding and CKA, and by eliciting on its cross-examination essentially the same testimony to which it had previously objected, Wal-Mart thereby waived the benefit of the earlier objection. *See Beam*, 45 N.C.App. at 84, 262 S.E.2d at 352 (failure to move to strike answer previously objected to results in waiver of objection), and *State v. Townsend*, 99 N.C. App. 534, 537, 393 S.E.2d 551, 553 (1990) ("settled law of this State, unchanged by the adoption of the North Carolina Rules of Evidence, is that '[w]here evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted *without objection, the benefit of the objection is lost*' ") (citation omitted).

Accordingly, in light of Wal-Mart's failure to move to strike the standard of care testimony by Burton which it now challenges on appeal, *see Beam*, 45 N.C.App. at 84, 262 S.E.2d at 352, and its presentation on cross-examination of essentially the same testimony of Burton to which it had previously objected, *see Townsend*, 99 N.C. App. at 537, 393 S.E.2d at 553, and its further failure to object to the tender of Burton as an expert in pharmacy or to request a *voir dire* hearing pursuant to Rule 705 to explore the bases for his opinion, *see Hedden v. Hall*, 23 N.C. App. 453, 455, 209 S.E.2d 358, 360 (failure to request *voir dire* examination of witness offered as expert and failure to object specifically to qualification of witness as expert constituted waiver of objections), *cert. denied*, 286 N.C. 334, 211 S.E.2d 212 (1974), the present argument of Wal-Mart, *i.e.*, that G.S. § 90-21.12 does not encompass a nationwide standard of care for pharmacists and that Burton's testimony concerning the standard of care applica-

ble to Adams was erroneously based upon a nationwide standard, is not properly before us.

In any event, we note this Court last year rejected a similar argument in *Marley v. Graper*, 135 N.C. App. 423, 428, 521 S.E.2d 129, 134 (1999) (although " 'it was the intent of the General Assembly to avoid the adoption of a national or regional standard of care for health providers,' if the standard of care for a given procedure is 'the same across the country, an expert witness familiar with that standard may testify despite his lack of familiarity with the defendant's community' ") (citations omitted), *cert. denied*, 351 N.C. 358, —— S.E.2d —— (2000). Wal-Mart's final assignment of error is therefore unavailing.

No error.

Judges LEWIS and EDMUNDS concur.