HERSCHEL H. HANEY, JR., ADMINISTRATOR OF THE ESTATE OF HERSCHEL H. HANEY, SR. v. DR. J. B. ALEXANDER, DR. H. N. LEE AND SOUTHEASTERN GENERAL HOSPITAL, INC.

No. 8416SC406

(Filed 18 December 1984)

1. **Hospitals § 5— nursing malpractice—directed verdict for hospital improper**

In a nursing malpractice action, directed verdict should not have been granted for defendant hospital where plaintiff qualified two expert witnesses who testified that plaintiff's father died due to defendant's failure to meet the applicable standard of health care. G.S. 90-21.12, G.S. 1A-1, Rule 50(a).

2. **Physicians, Surgeons and Allied Professions § 15.2— nursing malpractice—doctors properly qualified as to standard of care**

The trial court properly allowed two doctors to give their opinions as expert witnesses for plaintiff as to whether defendant hospital's nurses violated the applicable standard of care because both witnesses testified that they had taught and worked with nurses, that the nurses they had worked with had the same degree requirements and similar training to those who cared for plaintiff's father, and that there was no variation in the standard of care for all nurses in accredited hospitals across the country with respect to the basic

_____

duties at issue in this case. G.S. 90-21.12, Rule 10(d), North Carolina Rules of Appellate Procedure.

**3. Physicians, Surgeons and Allied Professions § 11.1— nursing malpractice—national standard of care**

Plaintiff's medical witnesses were qualified to testify in a nursing malpractice case despite their unfamiliarity with community standards for nursing care in Lumberton because they testified that the standard of care for the nursing duties at issue in this case was the same for nurses in accredited hospitals across the country.

**4. Physicians, Surgeons and Allied Professions § 17— nursing malpractice—proximate cause—evidence sufficient**

Plaintiff's evidence was sufficient to create an issue of proximate cause for the jury where plaintiff's experts testified that defendant's nurses were negligent in not monitoring their patient's blood pressure after his condition worsened, in not reporting to the patient's doctor a rise in pulse to 120, and in erroneously telling the doctor that the patient had not been given Librium when in fact he had.

APPEAL by plaintiff from *Smith, Judge*. Judgment entered 9 March 1982 in Superior Court, ROBESON County. Heard in the Court of Appeals 4 December 1984.

Plaintiff brought a wrongful death action on behalf of his father's estate, claiming that the negligence of the defendants proximately caused the death of his father. Plaintiff's father had driven himself to the emergency room of defendant hospital on 19 July 1977. Defendant Alexander examined him initially and diagnosed atrial fibrillation with marked hypertension. Dr. Alexander admitted plaintiff's father to the hospital and placed him on the drug Quinidine in an effort to control his abnormal heart rhythm. He showed signs of improvement the next morning, on 20 July 1977, when Dr. Alexander last saw him.

Defendant Lee was on call for Dr. Alexander during the evening of 20 July 1977 and the early morning hours of 21 July 1977, thereby assuming responsibility for the care of plaintiff's father. At 11:00 p.m. a nurse reported that plaintiff's father was nervous, dizzy, and sweaty with a pulse of 98 beats per minute. No mention was made of his blood pressure. Dr. Lee ordered that he be given a moderate dose of the sedative Librium. The Librium was administered but plaintiff's father continued to experience nervousness and sweatiness. His pulse rate increased to 120 beats per minute. An hour or so after the 11:00 p.m. call, a

nurse informed Dr. Lee that the patient's symptoms persisted, although the nurse failed to report the increased pulse rate or any other vital signs. Upon being told that plaintiff's father had *not* been given Librium, Dr. Lee again ordered the sedative, and plaintiff's father received his second dose of Librium at 12:45 a.m. on 21 July 1977. Forty-five minutes later a nurse found him dead. An autopsy indicated that cardiac arrhythmia was the probable cause of death.

Defendants' motions for directed verdicts at the close of plaintiff's evidence were denied. Defendants Alexander and Lee presented evidence but defendant hospital did not. At the close of all the evidence the trial court again denied the motions by defendants Alexander and Lee for directed verdicts, but it granted a directed verdict in favor of defendant hospital. Both doctors subsequently reached a settlement with plaintiff, so the present appeal relates solely to defendant hospital (hereinafter, defendant).

*McLeod & Senter, P.A., by John Michael Winesette, for plaintiff, appellant.*

*Harris, Cheshire, Leager & Southern, by W. C. Harris, Jr., and Claire L. Moritz, for defendant, appellee Southeastern General Hospital, Inc.*

HEDRICK, Judge.

[1] Plaintiff's assignment of error raises the single question of whether the trial court properly directed a verdict for defendant under G.S. 1A-1, Rule 50(a). A directed verdict for defendant is proper only if plaintiff's evidence is insufficient as a matter of law to support his claim. In ruling on defendant's motion for directed verdict, the trial court must consider the evidence in the light most favorable to plaintiff and give plaintiff the benefit of every reasonable inference. *Willoughby v. Wilkins*, 65 N.C. App. 626, 631, 310 S.E. 2d 90, 94 (1983), *disc. rev. denied*, 310 N.C. 631, 315 S.E. 2d 697, 698 (1984). "[T]he court must consider even 'incompetent' evidence in ruling on a motion for a directed verdict." *Hart v. Warren*, 46 N.C. App. 672, 678, 266 S.E. 2d 53, 58, *disc. rev. denied*, 301 N.C. 89 (1980) (citing *Koury v. Follo*, 272 N.C. 366, 158 S.E. 2d 548 (1968) ). "The reason for this rule is that the admission of such [incompetent] evidence may have caused the plaintiff to

omit competent evidence of the same import." *Huff v. Thornton*, 23 N.C. App. 388, 390, 209 S.E. 2d 401, 403 (1974), *affirmed*, 287 N.C. 1, 213 S.E. 2d 198 (1975).

Plaintiff in the present case qualified two expert witnesses, Drs. LeBeau and Rein, with regard to the standard of basic nursing care defendant owed to plaintiff's father under the medical malpractice statute, G.S. 90-21.12. These expert witnesses testified that plaintiff's father died due to defendant's failure to meet the applicable standard of health care. This testimony is sufficient to create a jury issue as to whether defendant failed to provide plaintiff's father with health care in accordance with the standards of practice among nurses with similar training and experience situated in the same or similar communities at the time of the act giving rise to the alleged cause of action, and as to whether defendant's alleged failure to provide appropriate health care proximately caused the death of plaintiff's father. Thus the judgment directing a verdict for defendant will be reversed and the cause remanded for a new trial.

[2] By its two cross-assignments of error defendant contends the trial court erred in allowing Drs. LeBeau and Rein to give their opinions as to whether defendant's nurses violated the relevant standard of care and thereby proximately caused the death of plaintiff's father. Rule 10(d), North Carolina Rules of Appellate Procedure, provides that an appellee may cross-assign as error "any action or omission of the trial court . . . which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken." Since, as pointed out above, there must be a new trial, it is not necessary for us to discuss these cross-assignments of error, but lest the parties misconstrue our failure to do so as a holding that the trial court erred in allowing the testimony in question, we hold the trial court did not err for the reasons that follow.

Defendant argues that plaintiff's expert witnesses, one of whom was an internist and cardiologist and the other of whom was a family practitioner, may have been medical experts in their respective fields but were not qualified as experts in the nursing standard of care applicable to defendant under G.S. 90-21.12, which provides:

In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

Nurses fall within the definition of "health care provider." G.S. 90-21.11. In order for plaintiff's medical witnesses to qualify as experts with regard to the nursing standard of care applicable to defendant, plaintiff was required under G.S. 90-21.12 to lay a foundation showing the witnesses were familiar with the standard of practice (1) among nurses with similar training and experience, (2) who were situated in the same or similar communities, (3) at the time plaintiff's father died. The trial court expressly qualified plaintiff's medical witnesses as experts, and implicitly qualified them as experts on the nursing standard of care applicable to this case by letting them testify on that subject over objection. "The competency of a witness to testify as an expert in the particular matter at issue is addressed primarily to the sound discretion of the trial court, and its determination is not ordinarily disturbed by the reviewing court." *Food Town Stores v. City of Salisbury,* 300 N.C. 21, 37, 265 S.E. 2d 123, 133 (1980) (citation omitted). We find that the trial court acted within its discretion in allowing plaintiff's medical witnesses to testify on the nursing standard of care at issue in this case for the reasons set forth below.

Plaintiff established the elements of his foundation for expert testimony when his first medical witness, Dr. LeBeau, testified that he was familiar with the standard of care of registered nurses in accredited hospitals in communities similar to Lumberton, where defendant is situated, during July of 1977. Dr. LeBeau gained familiarity with the duties and functions of registered nurses in day-to-day dealings with them. He taught nursing students in a clinical setting. He stated that the nurses who treated plaintiff's father while in the employ of defendant had comparable training and experience to the nurses with whom he

regularly dealt because they had the same degree qualifications. More specifically, Dr. LeBeau testified that he was familiar with the basic duty of all nurses in accredited hospitals across the nation to take vital signs when a patient exhibits unusual or new symptoms. He related his familiarity with this particular standard of care to the particular facts of this case; namely, the failure of defendant's nurses to completely monitor vital signs such as blood pressure when the condition of plaintiff's father worsened.

Similarly, plaintiff's other medical witness, Dr. Rein, testified that he had taught and worked with nurses. He too stated that there was no variation in the nursing standard of care for all nurses in accredited hospitals across the country in July of 1977 with respect to the basic duties at issue in this case. Like Dr. LeBeau, he satisfied the "similar training and experience" part of G.S. 90-21.12 with testimony that the nurses he worked with had the same degree requirements and similar training to those who cared for plaintiff's father.

In the context of the basic nursing duties at issue in this case, plaintiff's medical witnesses demonstrated sufficient knowledge of the relevant standard of care to be deemed expert witnesses. The testimony of plaintiff's witnesses should not be barred merely because they are doctors while defendant's agents are nurses. Clearly, defendant's suggestion that only nurses can qualify as experts to testify as to nursing standards of care is, in our opinion, not contemplated by G.S. 90-21.12. Defendant's cross-assignments of error are without merit.

[3] Defendant also contends that plaintiff's medical witnesses were not qualified to testify because they were unfamiliar with the community standards for nursing care in Lumberton. However, Drs. LeBeau and Rein did testify that the standard of care for taking and reporting vital signs of a deteriorating patient was the same for nurses in accredited hospitals across the country. Where the standard of care is the same across the country, an expert witness familiar with that standard may testify despite his lack of familiarity with the defendant's community. *Rucker v. Hospital*, 285 N.C. 519, 206 S.E. 2d 196 (1974); *Howard v. Piver*, 53 N.C. App. 46, 279 S.E. 2d 876 (1981).

[4] Defendant finally argues that plaintiff's evidence was merely speculative on the issue of proximate cause and therefore could

not overcome the hurdle of a motion for directed verdict. Plaintiff's experts testified that defendant's nurses were negligent in not monitoring their patient's blood pressure after 11:00 p.m. when his condition worsened, in not reporting to Dr. Lee the rise in pulse to 120, and in erroneously telling Dr. Lee that the patient had not been given Librium when in fact he had. Plaintiff's experts positively stated that these acts of negligence proximately caused the death of plaintiff's father. The double dose of Librium may have prevented him from complaining of the sudden downturn in his condition, thereby preventing him from obtaining the medical assistance necessary to save his life. Even more likely, the failure to monitor blood pressure and report the 120 pulse rate kept Dr. Lee from learning that heart failure was imminent and that the patient was about to die without new treatment. This evidence was sufficient to create an issue of proximate cause for the jury.

Reversed and remanded.

Judges WHICHARD and EAGLES concur.