JENNIFER L. PITTS, ADMINISTRATRIX OF THE ESTATE OF FELICIA HOPE LYNCH, PLAINTIFF
  v. NASH DAY HOSPITAL, INC., ENGLEWOOD OB-GYN ASSOCIATES, INC.,
  TOMMY R. HARRIS, AND MOSES E. WILSON, DEFENDANTS

No. COA03-558

(Filed 7 December 2004)

**Medical Malpractice— expert testimony excluded—standard
of care—similar community**

The trial court erred by excluding a doctor's expert testimony
from a medical malpractice trial based on the conclusion that the
witness was articulating a national standard of care. Although the
doctor testified that the standard of care for the surgery in ques-
tion is national, the issue is whether his testimony as a whole
meets the requirements of N.C.G.S. § 90-21.12. He established his
knowledge of the standard of care in a similar community in light
of his equivalent skill and training, familiarity with the equipment
and techniques used in the surgery at issue, his first-hand investi-
gation of the town where the surgery was performed (Rocky
Mount) and its hospital, and his testimony about the similarity of
Rocky Mount to the communities where he had practiced.

Judge STEELMAN dissenting.

Appeal by plaintiff from order entered 19 December 2002 by
Judge Milton F. Fitch, Jr. in Nash County Superior Court. Heard in the
Court of Appeals 18 March 2004.

*Rountree & Boyette, L.L.P., by Charles S. Rountree, for
plaintiff-appellant.*

*Yates, McLamb & Weyher, L.L.P., by Barry S. Cobb, for
defendants-appellees.*

CALABRIA, Judge.

Jennifer L. Pitts ("plaintiff"), administratrix of the estate of
Felicia Hope Lynch, appeals from order of the trial court excluding
the testimony of plaintiff's expert witness and directing a verdict in
favor of defendants, Englewood OB-GYN Associates, Inc.
("Englewood"), Tommy R. Harris ("Dr. Harris"), and Moses E. Wilson
("Dr. Wilson").[1] For the reasons stated herein, we reverse.

---

1. Plaintiff previously took a voluntary dismissal of all claims against Nash Day
Hospital, Inc. with prejudice.

PITTS v. NASH DAY HOSP., INC.

[167 N.C. App. 194 (2004)]

This lawsuit arose out of allegations of negligence surrounding laparoscopic surgery performed on Felicia Hope Lynch ("Ms. Lynch") by Dr. Harris on 13 January 1998. Due to ·chronic pelvic pain and an adnexa cyst, Ms. Lynch's physician referred her to Dr. Harris, a board-eligible but not board-certified specialist in obstetrics and gynecology with operative privileges at Nash Day Hospital. Ms. Lynch's sonogram revealed an ovarian cyst measuring five centimeters. Dr. Harris scheduled Ms. Lynch for surgery to remove the cyst.

On 13 January 1998 at Nash Day Hospital after Ms. Lynch was placed under anesthesia and examined, Dr. Harris commenced the laparoscopic surgery for removal of the cyst and possibly an ovary. During the surgery, Dr. Harris discovered the cyst was much smaller than originally anticipated but multiple adhesions in Ms. Lynch's pelvic region connected her organs to her abdominal wall. Dr. Harris changed his surgical plan and attempted to cut and release the adhesions but stopped when he deemed it was no longer safe and saw that he could not remove all the adhesions. Upon completion of the surgery, Dr. Harris placed a clear fluid in the abdominal cavity to ensure there was no remaining internal bleeding and found no indication of any bleeding. After surgery, Ms. Lynch was taken to the Nash Day Hospital recovery room, where it was noted that her blood pressure had dropped. Nevertheless, Dr. Harris never examined or observed Ms. Lynch after the surgery. He testified that Ms. Lynch was not yet awake, "so there was nothing for me to say to her." Dr. Harris also testified that, after surgery, it was standard practice for the anesthesiologist, rather than the operating surgeon, to manage the care of the patient in the recovery room.

Following discharge, Ms. Lynch experienced nausea, vomiting, abdominal cramps, and was also lethargic and pale. James Lee Williams ("Mr. Williams"), Ms. Lynch's boyfriend, called Dr. Harris' office, Englewood, multiple times reporting the problems Ms. Lynch was experiencing. The office staff, on behalf of Dr. Harris' partner, Dr. Wilson, told Mr. Williams the symptoms were normal. On the night of 14 January 1998, Ms. Lynch stopped breathing and efforts to resuscitate her were unsuccessful. She was pronounced dead in the emergency room at Halifax Memorial Hospital. The medical examiner determined the cause of her death was "exsanguination from the left ovarian artery." Stated another way, Ms. Lynch bled to death internally from a cut to her left ovarian artery, either by "scalpel or trochar injury" or while the "adhesions were being lysed." At the time of her death, Ms. Lynch was twenty-eight years old.

Plaintiff brought suit for wrongful death and medical malpractice. Plaintiff alleges Dr. Harris was negligent in his surgical performance and administration of post-operative care. Plaintiff also contends Dr. Wilson failed to properly respond to the telephone calls from Mr. Williams alerting him and his staff of Ms. Lynch's failing condition.

At trial, plaintiff tendered one expert witness, Daniel M. Strickland ("Dr. Strickland"), as an "expert in the standards of practice in this case." Three separate times, plaintiff attempted to tender Dr. Strickland as an expert witness. Defendants objected each time, contending plaintiff had failed to establish Dr. Strickland was familiar with the standard of care in Rocky Mount or a similar community, as required by N.C. Gen. Stat. § 90-21.12 (2003). The trial court allowed plaintiff to reopen Dr. Strickland's testimony in order to make a further showing on the issue of "similar community." After finding that plaintiff failed to present competent medical testimony establishing the relevant standard of care, the trial court granted defendants' motion for directed verdict. Plaintiff appeals.

Plaintiff assigns error to the trial court's finding of fact that Dr. Strickland was not familiar with "the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act." Plaintiff also assigns error to the trial court's conclusions of law that Dr. Strickland's testimony was irrelevant, immaterial, and inadmissible. We agree with plaintiff and reverse the trial court.

The trial court directed a verdict in the case *sub judice* after determining that Dr. Strickland could not show personal knowledge of the standard of care for laparoscopic surgery in Rocky Mount or a similar community. We initially note that "[t]he competency of a witness to testify as an expert is addressed to the sound discretion of the trial court and the trial court's determination will not be disturbed by the reviewing court in the absence of an abuse of discretion." *Barham v. Hawk*, 165 N.C. App. 708, 711-12, 600 S.E.2d 1, 4 (2004). In determining whether the trial court abused its discretion, we consider N.C. Gen. Stat § 90-21.12, which sets forth the standard of care in medical malpractice cases:

> In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless

the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

In analyzing N.C. Gen. Stat. § 90-21.12, the trial court opined that the legislature "intended in every way to say as strongly as they could say it that North Carolina wishes to avoid a national standard of care." The court concluded that "Dr. Strickland has articulated a national standard rather than the local standard of Rocky Mount."

Although Dr. Strickland testified that the standard of care for laparoscopic surgery is a national standard, we are not of the opinion that such testimony inexorably requires that his testimony be excluded. Rather, the critical inquiry is whether the doctor's testimony, taken as a whole, meets the requirements of N.C. Gen. Stat. § 90-21.12. In making such a determination, a court should consider whether an expert is familiar with a community that is similar to a defendant's community in regard to physician skill and training, facilities, equipment, funding, and also the physical and financial environment of a particular medical community.[2] *See Henry v. Southeastern OB-GYN Assocs., P.A.*, 145 N.C. App. 208, 211, 550 S.E.2d 245, 247 (2001); *Tucker v. Meis*, 127 N.C. App. 197, 198-99, 487 S.E.2d 827, 829 (1997).

---

2. There appears to be some conflict concerning what testimony sufficiently obviates the need to show an expert's familiarity with a defendant's community under N.C. Gen. Stat. § 90-21.12. This Court has previously held that "while 'it was the intent of the General Assembly to avoid the adoption of a national or regional standard of care for health care providers,' if the standard of care for a given procedure is 'the same across the country, an expert witness familiar with that standard may testify *despite his lack of familiarity with the defendant's community*[.]' " *Marley v. Graper*, 135 N.C. App. 423, 428, 521 S.E.2d 129, 133-34 (1999) (internal citations omitted) (emphasis added). *See also Brooks v. Wal-Mart Stores, Inc.*, 139 N.C. App. 637, 656-57, 535 S.E.2d 55, 67 (2000); *Haney v. Alexander*, 71 N.C. App. 731, 736, 323 S.E.2d 430, 434 (1984). Subsequent opinions of this Court more stringently focused on the intent of the General Assembly to avoid a national standard of care. *See Henry*, 145 N.C. App. at 210-11, 550 S.E.2d at 246 (2001) (noting the "similar community" standard "encompasses more than mere physician skill and training" and includes variations in facilities, equipment, funding, and also "the physical and financial environment"); *Tucker v. Meis*, 127 N.C. App. 197, 198, 487 S.E.2d 827, 829 (1997). As such, *Henry* requires some level of familiarity with a defendant's community even if an expert testifies the standard is the same across the country. Yet, a recent opinion has questioned whether *Henry* constitutes controlling authority, *see Cox v. Steffes*, 161 N.C. App. 237, 245 n.1, 587 S.E.2d 908, 914 n.1 (2003), *disc. rev. denied*, 358 N.C. 233, 595 S.E.2d 148 (2004), and distinguished *Henry. Id.*

In the case *sub judice*, the evidence showed that Dr. Strickland's skill, training, and experience in obstetrics and gynecology are comparable to Dr. Harris' skill, training, and experience. Regarding the respective physician skill and training, the evidence showed that Dr. Harris is a board-eligible specialist in obstetrics and gynecology. Dr. Strickland is a board-certified specialist in obstetrics and gynecology. Dr. Harris and Dr. Strickland were trained outside of North Carolina but practiced medicine in multiple communities within the State. Dr. Harris undergoes continuing medical education including 150 hours of required credits every three years and also takes numerous courses in Maryland and Georgia. Dr. Strickland is a Fellow with the American College of Obstetricians and Gynecologists.

The evidence was also sufficient to show that facilities, equipment, funding, and the physical and financial environment of both the communities in which Dr. Strickland practiced obstetrics and gynecology and in Rocky Mount are similar. Dr. Strickland is licensed in five states, currently practices in West Jefferson, North Carolina, and has also practiced extensively in other locations throughout North Carolina including Albemarle, Boone, Elkin, Lenoir/Hickory, Mount Airy, and Wilkesboro. At trial, Dr. Strickland specifically cited the population and median income of Rocky Mount and testified that Rocky Mount is similar to communities in which he has practiced in terms of population served, rural nature, depressed economy, and limitations on resources. Additionally, prior to testifying, Dr. Strickland not only observed the community of Rocky Mount but also noted the size of Nash Day Hospital. Dr. Strickland also testified that he deduced from medical records and Dr. Harris' deposition the type of equipment and techniques Dr. Harris used in Ms. Lynch's surgery. Dr. Strickland was familiar with the equipment because he used similar to equipment in other communities in his medical practice.

Dr. Strickland's testimony falls within the scope of testimony that this Court has held to be permissible under N.C. Gen. Stat. § 90-21.12. In *Cox v. Steffes*, this Court summarized some of the relevant cases:

> In *Coffman v. W. Earl Roberson, M.D., P.A.*, 153 N.C. App. 618, 624-25, 571 S.E.2d 255, 259 (2002), *disc. review denied*, 356 N.C. 668, 577 S.E.2d 111 (2003), this Court held that a doctor's testimony regarding standard of care was sufficient when the doctor testified generally that he was familiar with the standard of care in communities similar to Wilmington, that he based his opinion on Internet research regarding the hospital, and that he knew the hospital was a sophisticated training hospital. *See also*

*Leatherwood v. Ehlinger*, 151 N.C. App. 15, 22-23, 564 S.E.2d 883, 888 (2002) (reversing directed verdict when plaintiffs' expert specifically testified that he had knowledge of the standards of care in Asheville and similar communities because of his practice in *communities of similar size to Asheville* and because he had attended rounds as a medical student in the Asheville hospital at issue), *disc. review denied*, 357 N.C. 164, 580 S.E.2d 368 (2003).

*Cox*, 161 N.C. App. at 244-45, 587 S.E.2d at 913 (emphasis added). This Court went on to find the expert had sufficiently acquainted himself with the relevant community standards when he reviewed written information from the plaintiff's counsel prior to testifying. *Id.* Dr. Strickland's familiarity with Rocky Mount exceeds that previously deemed sufficient by this Court in reviewing the propriety of and reversing a directed verdict. Accordingly, we hold that Dr. Strickland established his knowledge of the standard of care in a "similar community" in light of his equivalent skill and training, familiarity with the equipment and techniques used by Dr. Harris, first-hand investigation of Rocky Mount and its hospital, and his testimony as to the similarity in the communities where he has practiced and Rocky Mount.

Because we hold that Dr. Strickland established that he had knowledge of a similar community and the trial court abused its discretion in excluding his testimony, we do not reach plaintiff's other assignments of error.

Reversed.

Judge McGEE concurs.

Judge STEELMAN dissents in a separate opinion.

STEELMAN, Judge, dissenting.

I respectfully dissent from the majority's holding that the expert witness which plaintiff tendered sufficiently met the "same or similar community" standard as required by N.C. Gen. Stat. § 90-21.12.

### I. Standard of Review

As noted by the majority opinion, our standard of review for the trial court's exclusion of plaintiff's expert witness is abuse of discretion. An abuse of discretion occurs only where the trial court's ruling

is "manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision. *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998). Plaintiff's burden to show an abuse of discretion is a heavy one indeed. I do not believe plaintiff has met this burden and therefore, the ruling of the trial court should be affirmed.

## II. Similar Community Standard

The trial judge afforded plaintiff not one, not two, but three opportunities to present testimony that met the standard of "similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action." N.C. Gen. Stat. § 90-21.12 (2003). In order to determine whether the trial judge abused his discretion, it is necessary to review in detail the proffered testimony.

Dr. Strickland testified he was familiar with the standards of practice for the performance of laprascopic surgery and follow-up care in Rocky Mount, North Carolina and similar communities. When asked the basis of this familiarity, Dr. Strickland stated:

> First of all, I believe that the standard is national, but more than that, if you consider the broad depth of American education, physicians in any area are trained from all over the country. Different medical schools from all over the country, different residencies from all over the country. We generally belong to the same professional organizations. We generally attend the same meetings. We read the same journals. Therefore there's an integration of medical practice in the United States, in my opinion, and I don't believe the standard is any different for Rocky Mount than it is for Elkin or Albemarle or West Jefferson.

During plaintiff's second tender, Dr. Strickland testified he had practiced in Elkin, Albemarle, Lenoir, Mount Airy and Wilkesboro, and that certain of those communities were similar in population to Rocky Mount. He further stated the records used at Nash General Hospital were similar to those he had used elsewhere, but was "not sure what [he could] directly deduce" from them. Following a forty-five minute recess, plaintiff made a third tender. Dr. Strickland testified he had: (1) determined the median income and population of Rocky Mount from the telephone book; (2) deduced the surgical resources available in the Rocky Mount community from the types of equipment listed in the operative report; and (3) driven by the hos-

pital and through Rocky Mount to get an impression of its economic base. He then formed an opinion that Rocky Mount was similar to some of the areas where he had practiced. At the conclusion of the third tender, Dr. Strickland was asked the following questions:

> [Defense counsel:] So, to summarize, what you know about the standard of care for OB-GYN surgeons practicing in Rocky Mount is that you've practiced in other small towns in North Carolina, you have driven past the hospital here, you have driven around enough to have knowledge in passing of what the industrial base was, and you've looked at the telephone book to see what the median income and population is. Is that basically what your basis is, Doctor?
>
> [Dr. Strickland:] My basis for concluding that they are similar?
>
> [Defense counsel:] Is that your basis—is that the basis of what you know about Rocky Mount, North Carolina and the standard of practice here?
>
> [Dr Strickland:] I suppose that's accurate.

It is not sufficient for an expert witness to merely make the assertion that the medical communities are similar, there must be a reasonable basis for this assertion. *Smith v. Whitmer*, 159 N.C. App. 192, 196-97, 582 S.E.2d 669, 672-3 (2003) (stating that even though the expert testified he was familiar with the standard of care in that medical community, he gave no basis for his conclusion, and thus his opinion was irrelevant). *See also Tucker v. Meis*, 127 N.C. App. 197, 198, 487 S.E.2d 827, 829 (1997) (finding the expert doctor "failed to make the statutorily required connection to the community in which the alleged malpractice took place or to a similarly situated community"). The "similar community" standard "encompasses more than mere physician skill and training[.]" *Henry v. Southeastern OB-GYN Assocs., P.A.*, 145 N.C. App. 208, 211, 550 S.E.2d 245, 247 (2001). It also encompasses variations in facilities, equipment, funding, and also the physical and financial environment of a particular medical community. *Id.*

The population and industrial base of a community are not relevant *per se* to meeting the "similar community" standard. It is not the size of a town or its economic resources that are to be considered, but rather how those resources are reflected in the "conditions, facilities and equipment available to a healthcare professional[.]" *Id.* at 213, 550 S.E.2d at 248 (Greene, J., concurring in the result).

In plaintiff's third attempt to tender Dr. Strickland as an expert, Dr. Strickland did testify about the surgical resources of the community based on his review of the operative report. However, this testimony appears to conflict with his testimony in the second tender, where he stated he was not sure what he could deduce from those reports.

The majority relies heavily on the case on *Cox v. Steffes*, 161 N.C. App. 237, 587 S.E.2d 908 (2003), *disc. review denied*, 358 N.C. 233, 595 S.E.2d 148 (2004). In *Cox*, the trial court granted defendant's motion for judgment notwithstanding the verdict and set aside a jury verdict in favor of the plaintiffs. *Id.* at 238, 587 S.E.2d at 909-10. The trial judge based his ruling on the fact that the plaintiff's expert witness was not familiar with the standard of care in a similar community. *Id.* at 239, 587 S.E.2d at 911-12. Dr. Donelly, plaintiff's expert, testified he, like the defendant doctor, was a board-certified surgeon, and that both his and the defendant's hospital were Level 2 hospitals. *Id.* at 244, 587 S.E.2d 913. In addition, "Dr. Donelly also more specifically expressed his view that Reading was similar to Fayetteville with respect to board-certified physicians, sophisticated lab services, x-ray departments, anesthesia services, hospital certification, and access to specialists." *Id.* Dr. Donelly thus testifed as to the similarity of specific resources available to the medical community where he and the defendant practiced. Central to the holding in *Cox* was the testimony that both hospitals in Reading, Pennsylvania and Fayetteville, North Carolina were Level 2 hospitals.

In contrast, Dr. Strickland did not testify concerning the level of any hospitals, nor did he equate the surgical resources available in Rocky Mount to those in any of the other areas where he had practiced medicine. Moreover, Dr. Strickland was a board-certified specialist in obstetrics and gynecology, while Dr. Harris was only board-eligible. Although Dr. Strickland testified he was familiar with the standard of care in North Carolina, "he failed to make the statutorily required connection to the community in which the alleged malpractice took place or to a similarly situated community." *Tucker*, 127 N.C. App. at 198, 487 S.E.2d at 829.

Given Dr. Strickland's testimony in this case, I fail to discern how the trial court's exclusion of this testimony was "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision." I would thus affirm the trial court as to plaintiff's first assignment of error.

**PITTS v. NASH DAY HOSP., INC.**

[167 N.C. App. 194 (2004)]

Since I would affirm the trial court on plaintiff's first assignment of error, it is necessary that I address plaintiff's remaining arguments.

### III. National Standard of Care

Plaintiff asserts that laparoscopic surgery is a "revolutionary" and "cutting edge" medical technology requiring specialized training, and that such a technique should be subject to a national standard of care. Defendant, Dr. Harris, testified he had performed a thousand laparoscopies during his residency in the 1980's. Dr. Strickland testified he was familiar with "the standards of practice for the performance of laparoscopic surgery and follow-up care in Rocky Mount, North Carolina and similar communities." However, Dr. Strickland never testified that laparoscopic surgery was a "revolutionary" or "cutting edge" surgical technique or that he had even performed such surgery. Furthermore, he offered no testimony concerning the training necessary to perform laparoscopic surgery. The basis of his assertion that a "national standard of care" applied in this case was not the nature of the procedure. Rather, it was based upon a general characterization of "the broad depth of American education" of physicians. Dr. Strickland stated that "an integration" of the medical practice in the United States had occurred due to physicians in the area being trained at medical schools and performing their residencies all over the country, medical professionals belonging to the same professional organizations, attending the same meetings, and reading the same journals.

This Court has "recognized very few 'uniform procedures' to which a national standard may apply, and to which an expert may testify." *Henry*, 145 N.C. App. at 211, 550 S.E.2d at 247 (citations omitted). Dr. Strickland's testimony in this case fails to establish a "uniform procedure" or a "cutting edge" technology for which such a standard might possibly be appropriate. To apply a national standard of care in this case, based upon Dr. Strickland's testimony, would be to adopt a national standard of care for the practice of medicine in general. This is clearly contrary to the express provisions and intent of the General Assembly, which enacted a "same or similar community" standard in N.C. Gen. Stat. § 90-21.12.

While Dr. Strickland cogently and concisely set forth the case for a national standard of care, it is for this state's General Assembly, not the courts, to determine the appropriate standard of care in medical negligence cases.

PITTS v. NASH DAY HOSP., INC.

[167 N.C. App. 194 (2004)]

## IV.  Who Is To Determine the Applicable Standard of Care

Plaintiff next contends that whether West Jefferson, Elkin, Albemarle, Boone, Lenoir/Hickory, Mount Airy and Wilkesboro are in fact similar communities is a matter for the jury to determine, not the trial judge. I disagree.

It is the duty of the trial judge to determine whether an expert medical witness can render an opinion under N.C. Gen. Stat. § 90-21.12 and Rule 702 of the Rules of Evidence. *Taylor v. Abernethy*, 149 N.C. App. 263, 272, 560 S.E.2d 233, 239 (2002), *disc. review denied*, 356 N.C. 695, 579 S.E.2d 102 (2003). Furthermore, in none of the cases in which this court considered N.C. Gen. Stat. § 90-21.12, was the issue of similar communities left to the jury to decide. *Smith v. Whitmer*, 159 N.C. App. 192, 582 S.E.2d 669 (2003); *Leatherwood v. Ehlinger*, 151 N.C. App. 15, 564 S.E.2d 883 (2002); *Coffman v. Roberson*, 153 N.C. App. 618, 571 S.E.2d 255 (2002), *disc. review denied*, 356 N.C. 668, 577 S.E.2d 111 (2003); *Tucker v. Meis*, 127 N.C. App. 197, 487 S.E.2d 827(1997); *Henry v. Southeastern OB-GYN Assocs., P.A.*, 145 N.C. App. 208, 550 S.E.2d 245 (2001). It was for the trial court to determine whether Dr. Strickland was qualified as an expert in the area of his testimony and whether his testimony was relevant. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004). In this case, without a showing of "same or similar communities," Dr. Strickland was not qualified as an expert, nor was his testimony relevant on the appropriate standard of care. I would find this argument to be without merit.

## V.  No Requirement of Expert Testimony

Finally, plaintiff contends it was improper for the court to direct verdict in favor of defendants because the alleged negligence in this case was of a type that the jury could determine without the testimony of an expert. I disagree.

To prevail in a medical malpractice case a plaintiff must show " '(1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff.' " *Smith*, 159 N.C. App. at 195, 582 S.E.2d at 671 (citations omitted). Generally, expert testimony is required when the standard of care and proximate cause are matters involving highly specialized knowledge beyond that of laymen. *Smithers v. Collins*, 52 N.C. App. 255, 260, 278 S.E.2d 286, 289 (1981). However, expert testi-

mony is not necessary in all medical malpractice cases to establish the standard of care or proximate cause. *Id.* This is true, especially where the jury, based on its common knowledge and experience, is able to understand and judge the actions of the doctor. *Id.* This rule has been applied in the case of taking and recording a patient's vital signs and the placement of bedpans. *Henry*, 145 N.C. App. 208, 211, 550 S.E.2d 245, 247 (2001). This case now before us is not such a case, as it deals with laparoscopic surgery and the post-operative treatment of a surgery patient. This is beyond the "ken of laymen." I would find this assignment of error to be without merit.

## VI. Summary

Appellant has failed to demonstrate that the trial judge abused his discretion in excluding the testimony of Dr. Strickland. Plaintiff's remaining arguments are also equally unavailing. I would affirm the trial court.