CROCKER v. ROETHLING

[217 N.C. App. 160 (2011)]

RONALD CROCKER and PAULETTE CROCKER as Co-Administrators of the Estate of REAGAN ELIZABETH CROCKER, Plaintiffs v. H. PETER ROETHLING, M.D. and WAYNE WOMEN'S CLINIC, P.A., Defendants

No. COA10-1214

(Filed 15 November 2011)

## 1. Medical Malpractice—expert witness—summary judgment

The trial court did not abuse its discretion in a medical malpractice action by excluding plaintiff's sole expert witness where there was ample support in the record for a finding that the witness was not qualified to testify. While the witness claimed on *voir dire* to have familiarity with smaller hospitals similar to Wayne Memorial, he had never practiced at these hospitals, he did not demonstrate that the rarely performed maneuver at issue in this case was the standard of care in Goldsboro, and a national standard of care cannot be applied to this case, contrary to the witness's testimony.

## 2. Appeal and Error—remand—scope—not exceeded

The trial court did not exceed the scope of a remand from the North Carolina Supreme Court by granting defendants' motion for summary judgment. Plaintiffs asserted that the remand was only for a *voir dire* examination of their expert witness, but plaintiffs did not recognize that the Supreme Court was reviewing a summary judgment for defendants. Once the *voir dire* was done and the trial court affirmed its earlier decision to exclude the testimony, it was proper for the court to reissue the summary judgment for defendant.

## 3. Trials—remand—law of the case—not applied

Contrary to plaintiffs' contention, the trial court in a medical malpractice case did not hold on remand that the law of the case doctrine required that summary judgment be granted for defendants. The court's statement that summary judgment would have to be granted referred to the exclusion of plaintiffs' only expert witness after the *voir dire* required by the remand.

## 4. Appeal and Error—preservation of issues—summary judgment—notice—appearance at hearing

Plaintiffs waived any argument on appeal that they did not receive proper notice of defendants' motion for summary judgment by participating in the summary judgment hearing and not objecting or moving for a continuance.

CROCKER v. ROETHLING

[217 N.C. App. 160 (2011)]

Appeal by Plaintiffs from order entered 23 February 2010 by Judge W. Russell Duke, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 12 April 2011.

*Law Offices of Wade E. Byrd, P.A., by Wadé E. Byrd, for Plaintiffs-Appellants.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Samuel G. Thompson, William H. Moss, and Robert E. Desmond, for Defendants-Appellees.*

BEASLEY, Judge.

Ronald and Paulette Crocker, as co-administrators of the Estate of Regan Elizabeth Crocker, (Plaintiffs) appeal from the trial court's grant of summary judgment to H. Peter Roethling, M.D. (Dr. Roethling) and Wayne Women's Clinic, P.A. (the clinic). For the following reasons, we affirm.

On 14 September 2001, Paulette Crocker (Mrs. Crocker) was admitted to Wayne Memorial Hospital (Wayne Memorial) for an induction of labor. Delivery was complicated by shoulder dystocia, an obstetrical emergency where the fetal shoulder becomes impacted against the maternal pubic bone. A procedure that obstetricians can perform to relieve this condition is the Zavanelli maneuver, where the fetal head is pushed back into the vagina and uterus, and the fetus is delivered by cesarean section. Dr. Roethling attempted several maneuvers to relieve the shoulder dystocia, but did not try the Zavanelli maneuver. Plaintiffs' infant daughter, Reagan Elizabeth Crocker, died on 28 September 2003 from injuries that she sustained during delivery.

On 9 September 2004, Plaintiffs filed a medical malpractice action against Dr. Roethling and the clinic (collectively Defendants). Dr. John Elliott, an Obstetrician/Gynecologist who specializes in high risk obstetrics, served as the sole expert witness for Plaintiffs. He contended that Dr. Roethling violated the applicable standard of care by not attempting the Zavanelli maneuver. Defendants moved for summary judgment on the basis that Dr. Elliott was incompetent to testify as an expert witness. The trial court granted summary judgment to Defendants on 1 March 2006. Plaintiffs appealed and this Court twice affirmed the order granting summary judgment. *See Crocker v. Roethling (Crocker I)*, 182 N.C. App. 528, 642 S.E.2d 549 (2007), *aff'd on reh'g*, 184 N.C. App. 377, 646 S.E.2d 442 (2007) (unpublished). On discretionary review, our Supreme Court voted to remand

for a *voir dire* examination of Plaintiffs' expert to determine the admissibility of the proposed expert testimony. *Crocker v. Roethling (Crocker II)*, 363 N.C. 140, 675 S.E.2d 625 (2009).

On 23 February 2010, the trial court held the *voir dire* hearing. Dr. Elliott stated that for 27 years he had practiced high risk obstetrics in Maricopa County, Arizona, an area with a population of approximately 4.5 million. He further testified that he had neither performed nor witnessed a Zavanelli maneuver, and was unaware of any of the other 14 high risk obstetricians in his practice ever having performed this maneuver. He also did not know whether a Zavanelli maneuver had ever been performed either in Goldsboro, or anywhere else in the state of North Carolina. However, based on his practice, his experiences as an expert witness reviewing approximately 600 malpractice cases from 45 states, and his belief "that there is a national standard of care for most things," Dr. Elliott stated that he was familiar with the standards of practice of a physician practicing in a hospital such as Wayne Memorial.

Upon the conclusion of *voir dire*, the trial court ruled that the expert was incompetent to testify and granted summary judgment to Defendants.

I.

[1] To prevail in a medical malpractice action, the plaintiff must show "(1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff." *Weatherford v. Glassman*, 129 N.C. App. 618, 621, 500 S.E.2d 466, 468 (1998).

Plaintiffs' burden with respect to the applicable standard of care is to show by the greater weight of the evidence that Dr. Roethling's care "was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action." N.C. Gen. Stat. § 90-21.12 (2009). To satisfy this burden, "plaintiff must establish the relevant standard of care through expert testimony." *Smith v. Whitmer*, 159 N.C. App. 192, 195, 582 S.E.2d 669, 672 (2003). "Although it is not necessary for the witness testifying . . . to have actually practiced in the same community as the defendant, the witness must demonstrate that he is familiar with the standard of care in the community . . . or the standard of care of similar communities." *Id.* at 196, 582 S.E.2d at

CROCKER v. ROETHLING

[217 N.C. App. 160 (2011)]

672 (internal citations omitted). If Plaintiffs are unable to satisfy this burden, summary judgment is properly granted. *Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp.*, 175 N.C. App. 474, 478, 624 S.E.2d 380, 384 (2006).

"[T]he decision whether to admit expert testimony lies within the province of the trial court." *Crocker II*, 363 N.C at 155, 675 S.E.2d at 636 (citing N.C. Gen Stat. § 8C-1, Rule 104(a)). Accordingly, "a trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004).

This Court has stated that the "similar community" standard with regards to the standard of care in medical malpractice cases "encompasses more than mere physician skill and training[.] It also encompasses variations in facilities, equipment, funding, and also the physical and financial environment of a particular community." *Pitts v. Nash Day Hosp., Inc.*, 167 N.C. App. 194, 201, 605 S.E.2d 154, 159 (2004) (internal quotation marks and citations omitted). Dr. Elliott practices mainly at larger hospitals, one of which performs more than 6,000 deliveries per year, and is located in a metropolitan area with a population of 4.5 million people served by some 200 obstetricians. That hospital hardly seems comparable to Wayne County, and Goldsboro, with a population of approximately 100,000. Wayne Memorial has six labor and delivery suites compared to 36 at Dr. Elliott's tertiary referral hospital. While Dr. Elliott did claim to have familiarity with smaller hospitals similar to Wayne Memorial based on outreach education and consulting privileges, he never practiced medicine at these hospitals.

Further, Dr. Elliott has never performed a Zavanelli maneuver. He has never witnessed the maneuver. He was unaware of any of the other 14 high risk obstetricians with whom he practices ever having performed it. He did not know whether a Zavanelli maneuver had ever been performed either in Goldsboro or, for that matter, in the state of North Carolina. Quite simply, Dr. Elliott failed to demonstrate that this rarely-employed maneuver is the standard of care in Goldsboro, North Carolina.

Dr. Elliott argued that there is a national standard of care for shoulder dystocia, but that argument is unavailing. When the standard of care for a given procedure is "the same across the country, an expert witness familiar with that standard may testify despite his lack

of familiarity with the defendant's community." *Haney v. Alexander*, 71 N.C. App 731, 736, 323 S.E.2d 430, 434 (1984). "This Court, however, has recognized very few 'uniform procedures' to which a national standard may apply, and to which an expert may testify." *Henry v. Southeastern Ob-Gyn Assocs., P.A.*, 145 N.C. App. 208, 211, 550 S.E.2d 245, 247 (2001). This Court has been particularly reluctant to find a national standard for especially complex procedures. A national standard of care cannot be applied to this case because "an infant suffering from shoulder dystocia . . . involves medical procedures considerably more complicated than the taking of vital signs or the placement of bedpans." *Id.* We conclude that there is ample support in the record for a finding that Dr. Elliott was not qualified to testify in this case. The trial court, therefore, did not abuse its discretion in excluding his testimony.

II.

**[2]** Plaintiffs next argue that the trial court exceeded the scope of the mandate from the Supreme Court in *Crocker II* by granting Defendants' motion for summary judgment. We disagree.

It is well settled that upon appeal, a mandate from our Supreme Court is binding upon trial courts, and "must be strictly followed without variation or departure." *D&W, Inc. v. Charlotte*, 268 N.C. 720, 722, 152 S.E.2d 199, 202 (1966). However, it is equally clear that "[e]xpressions contained in an appellate court decision must be interpreted in the context of the factual situation under review, or the framework of the particular case." *Campbell v. Church*, 51 N.C. App. 393, 394, 276 S.E.2d 712, 713 (1981) (citations omitted).

Plaintiffs assert that the majority opinion[1] in Crocker II remanded the case to the trial court only for a *voir dire* examination of Dr. Elliott, and so the trial court went too far in granting summary judgment to Defendants after finding Dr. Elliott was not properly qualified as an expert. Plaintiffs fail to recognize that the order the Supreme Court reviewed was one granting summary judgment to Defendants, and so this was the order that remained pending on remand. The Supreme Court instructed the trial court to conduct a *voir dire* to determine if Dr. Elliott's testimony should in fact be admitted. Once the *voir dire* was done, and the trial court affirmed its earlier decision to exclude the testimony, it was proper for the trial court to also re-issue the grant of summary judgment to Defendants. Plaintiffs' argument is overruled.

---

1. Because it had the narrower holding, Justice Martin's opinion controlled. *See Crocker II*, 363 N.C. at 154 n.1, 675 S.E.2d at 635 n.1 (Newby, J., dissenting).

CROCKER v. ROETHLING

[217 N.C. App. 160 (2011)]

III.

**[3]** Plaintiffs also claim that the trial court erred in holding that the law of the case doctrine required summary judgment be granted for Defendants. We disagree.

There is no evidence in the record that the trial court applied the law of the case doctrine in order to find that Defendants were entitled to summary judgment. As discussed in Section II, *supra,* the record shows that after review, including a *voir dire* hearing, the trial court determined that Dr. Elliott's expert testimony was properly excluded and accordingly again granted summary judgment to Defendants. Dr. Elliott was Plaintiffs' only expert witness, and so Plaintiffs could not make out their *prima facie* case without his testimony. The trial court's statement that Defendants' motion for summary judgment "will, of course, have to be granted" is not evidence that the trial court felt compelled by the law of the case doctrine to so hold. It is more properly interpreted as the trial court's recognition that since Dr. Elliott's testimony was properly excluded, the grant of summary judgment was properly entered previously.

IV.

**[4]** Plaintiffs' final argument is that the trial court's grant of summary judgment was improper, because Plaintiffs did not receive ten days' notice of Defendants' motion for summary judgment. This argument is without merit.

This Court has held that "by attending the hearing and participating without objection" a plaintiff waives the ten day procedural notice otherwise required for a summary judgment hearing by N.C. Gen. Stat. § 1A-1, Rule 56(c). *Anderson v. Anderson,* 145 N.C. App. 453, 456-57, 550 S.E.2d 266, 269 (2001). It is uncontroverted that Plaintiff participated in the summary judgment hearing, and that Plaintiffs' counsel neither objected nor moved for a continuance. As such, Plaintiffs have waived this argument.

Affirmed.

Judges MCGEE and STROUD concur.