HIGGINBOTHAM v. D'AMICO

[226 N.C. App. 441 (2013)]

━━━━━━━━━

JEFFREY HIGGINBOTHAM, Plaintiff
v.
THOMAS A. D'AMICO, M.D., and DUKE UNIVERSITY
HEALTH SYSTEM, INC., Defendants

No. COA12-1099

Filed 16 April 2013

1. **Medical Malpractice—expert testimony—national standard of care**

     The trial court erred by directing a verdict in favor of defendants on plaintiff's medical malpractice claim. The mere use of the phrase "national standard of care" was not fatal to the expert's testimony that otherwise met the demands of N.C.G.S. § 90-21.12.

2. **Medical Malpractice—battery—recognized complication from surgical procedure**

     The trial court did not err by granting summary judgment in favor of defendants on plaintiff's battery claim in a medical malpractice case. All of the standard of care evidence was that the resulting event was a recognized complication of the consented-to surgical procedure.

Appeal by Plaintiff from order entered 19 September 2011 by Judge Carl R. Fox and judgment entered 14 December 2011 by Judge G. Wayne Abernathy in Durham County Superior Court. Heard in the Court of Appeals 28 February 2013.

**HIGGINBOTHAM v. D'AMICO**

[226 N.C. App. 441 (2013)]

*Cranford, Buckley, Schultze, Tomchin, Allen & Buie, P.A., by Paul I. Klein, for Plaintiff.*

*Yates, McLamb, & Weyher, L.L.P., by Dan J. McLamb and Lori Meyerhoffer, for Defendants.*

STEPHENS, Judge.

### Procedural History and Factual Background

This appeal arises from a professional liability case brought by Plaintiff Jeffrey Higginbotham, a former patient of Defendant Thomas A. D'Amico, M.D., a board-certified thoracic surgeon employed by Defendant Duke University Health System, Inc. ("Duke"). Plaintiff brought a civil action against Defendants, alleging medical malpractice, battery by performance of an unauthorized operation, and failure to obtain informed consent for a medical procedure, all of which led to serious injury. By order entered 19 September 2011, the trial court granted summary judgment to Defendants on the battery claim. The informed consent claim was dismissed by the trial court on 13 December 2011. At the close of Plaintiff's case on Defendants' alleged medical malpractice, the trial court granted Defendants' motion for a directed verdict in their favor. Plaintiff appeals from the directed verdict judgment and the order granting summary judgment in favor of Defendants on the battery claim.

In 2004, Plaintiff lived in Charleston, West Virginia, and drove a delivery truck. Plaintiff began experiencing pain and numbness in his left arm. Failing to receive a satisfactory diagnosis from several West Virginia physicians, Plaintiff was referred to a major medical center and chose Duke. At Duke, Plaintiff was diagnosed with thoracic outlet syndrome ("TOS"), which, *inter alia*, indicates that the thoracic outlet above the first rib is inadequate to allow necessary nerve supply. Plaintiff was eventually referred to D'Amico, whose proposed cure was to surgically remove the first rib to alleviate the nerve compression. Excision of the first rib was the procedure agreed to on the informed consent form signed by Plaintiff.

Plaintiff's surgery took place on 8 October 2004 and the operative notes indicated all went as planned. However, x-rays taken after surgery showed the left second (rather than first) rib had been removed. Plaintiff was not informed of this outcome. After surgery, Plaintiff returned home. A subsequent surgical infection brought Plaintiff to a local hospital

where treatment measures included an x-ray which revealed the missing second rib, much to the shock of Plaintiff. Plaintiff reported this discovery to D'Amico's assistant at his first port-operative visit on 4 November 2004; D'Amico was not present at the clinic that day. At a subsequent post-operative visit, D'Amico told Plaintiff he needed another operation immediately, but Plaintiff declined further surgery by D'Amico.

Plaintiff's TOS symptoms were not relieved and, in addition, he suffered a long thoracic nerve injury which required daily pain medication. Ultimately, in January 2005, Richard Sanders, M.D., a vascular surgeon in Colorado, performed a surgical procedure involving a different approach which did not require removal of a rib. However, even after that surgery, Plaintiff continued to suffer pain and limited mobility of his left arm. This action ensued.

## Discussion

On appeal, Plaintiff argues that the trial court erred in (1) directing a verdict in favor of Defendants on the medical malpractice claim and (2) granting summary judgment to Defendants on Plaintiff's battery claim. As to Plaintiff's first argument, we agree and reverse. We affirm summary judgment for Defendants on Plaintiff's battery claim.

### I. Directed verdict on medical malpractice claim

[1] Plaintiff first argues that the trial court erred in directing a verdict in favor of Defendants on Plaintiff's medical malpractice claim. We agree.

> This Court reviews a trial court's grant of a motion for directed verdict *de novo*. Therefore, we must determine whether, upon examination of all the evidence in the light most favorable to the nonmoving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence was sufficient to be submitted to the jury. When a defendant moves for a directed verdict in a medical malpractice case, the question raised is whether [the] plaintiff has offered evidence of each of the following elements of his claim for relief: (1) the standard of care; (2) breach of the standard of care; (3) proximate causation; and (4) damages.

*Kerr v. Long*, 189 N.C. App. 331, 334, 657 S.E.2d 920, 922 (citations, quotation marks, and brackets omitted), *cert. denied*, 362 N.C. 682, 670 S.E.2d 564 (2008).

The basis for Defendants' motion for a directed verdict was that Plaintiff's expert testified only to a "national" standard of care and did not establish sufficient familiarity with Duke and Durham so as to meet the well-established requirements of section 90-21.12:

> In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

N.C. Gen. Stat. § 90-21.12 (2009).[1] Where, as here, a directed verdict was granted on the basis that a doctor's testimony was to a national rather than a community standard of care,

> the critical inquiry is whether the doctor's testimony, *taken as a whole,* meets the requirements of N.C. Gen. Stat. § 90-21.12. In making such a determination, a court should consider *whether an expert is familiar with a community that is similar to a defendant's community in regard to physician skill and training, facilities, equipment, funding, and also the physical and financial environment of a particular medical community.*

*Pitts v. Nash Day Hosp., Inc.,* 167 N.C. App. 194, 197, 605 S.E.2d 154, 156 (2004) (citation omitted; emphasis added), *affirmed per curiam,* 359 N.C. 626, 614 S.E.2d 267 (2005). The mere use of the phrase "national standard of care" is not fatal to an expert's testimony if the expert's testimony otherwise meets the demands of section 90-21.12. *Id.*

In the alternative, "[w]here the standard of care is the same across the country, an expert witness familiar with that standard may testify despite his lack of familiarity with the defendant's community." *Haney v. Alexander,* 71 N.C. App. 731, 736, 323 S.E.2d 430, 434 (1984), *cert. denied,* 313 N.C. 329, 327 S.E.2d 889 (1985); *see also Cox v. Steffes,*

---

1. This section was amended effective 1 October 2011 with the amendments being applicable to causes of action arising on or after that date. Accordingly, the amended version of the statute is not applicable in this case.

161 N.C. App. 237, 244, 587 S.E.2d 908, 913 (2003), *disc. review denied*, 358 N.C. 233, 595 S.E.2d 148 (2004). For example, in *Cox*, the expert

> testified that the standard of care at issue in th[at] case was in fact the same across the nation. As to post-operative care, [the expert] first testified, "I think it is universally accepted the standard of care." He then agreed more specifically that with respect to post-operative care "the standard of care applicable for that would be the same across the US in 1994 for any board-certified surgeon[.]"

*Id.* (alteration in original).

Here, Plaintiff's expert, Robert Streisand, M.D., a vascular and thoracic surgeon from New York, repeatedly used the phrase "national standard of care" in his testimony.[2] As noted repeatedly by the appellate courts of this State, use of this phrase in and of itself does not prevent a medical expert's testimony from meeting the standard set forth in section 90-21.12. *See, e.g., Pitts*, 167 N.C. App. at 197, 605 S.E.2d at 156. Rather, we must consider whether, taking his testimony as a whole, Streisand evinced familiarity with Duke "in regard to physician skill and training, facilities, equipment, funding, and also the physical and financial environment of a particular medical community" or testified that the standard of care was the same across the United States. *Id.; Haney*, 71 N.C. App. at 736, 323 S.E.2d at 434. After careful review, we conclude that, taken as a whole, Streisand's testimony met the requirements of section 90-21.12.

Streisand testified that Duke "had a fine reputation as a medical institution." He further opined that the standard of care at Duke would be "the national standard of care that's applied to all finer institutions." Streisand went on to describe the standard of care for Duke as the same as that at UCLA and Johns Hopkins: "the top level of teaching hospitals in urban settings." Streisand also agreed that Duke, like UCLA and Johns Hopkins and "other major university hospitals[,]" would have the "highest standard of care of the best hospitals in the nation[.]" This testimony does not suggest that Streisand was asserting a national standard of care which would be the same at hospitals in every community across the country. On the contrary, Streisand testified that the standard of care at Duke was the same as found at other "top level . . . teaching hospitals in urban settings" and "other major university hospitals[,]" such as UCLA

---

2. Streisand was not available to testify during the presentation of Plaintiff's case at trial. Defendants consented to having Streisand's discovery deposition testimony read aloud to the jury in place of Streisand's live testimony.

and Johns Hopkins, to wit, the "highest standard of care of the best hospitals in the nation[.]"

We find this testimony analogous to that of the medical expert in *Rucker v. High Point Mem'l Hosp.*, 285 N.C. 519, 206 S.E.2d 196 (1974). In that case, the plaintiff's expert on standard of care was excluded by the trial court for the reason that he was not familiar with the medical staff and facilities at the defendant hospital. *Id.* at 526, 206 S.E.2d at 200. Our Supreme Court affirmed this Court's award of a new trial to the plaintiff, noting that the plaintiff's expert

> testified he was familiar with the standards of practice and procedures in duly accredited hospitals and that they were essentially the same throughout the United States. However, the plaintiff alleged and both defendants admitted that the defendant High Point Memorial Hospital was engaged, at all times herein mentioned, in operating and maintaining "a fully accredited hospital" in the City of High Point.

*Id.* at 526, 206 S.E.2d at 201 (emphasis omitted); *accord Baynor v. Cook*, 125 N.C. App. 274, 277, 480 S.E.2d 419, 421 (noting that "*Rucker* allowed an expert to testify because he was familiar with accredited hospitals across the country and that the treatment of gunshot wounds was the same at all such hospitals, not because North Carolina had adopted a national standard of care"), *disc. review denied*, 346 N.C. 275, 487 S.E.2d 537 (1997). Thus, in *Rucker*, our Supreme Court specifically held that expert standard of care testimony met the requirements of section 90-21.12 where the "same or similar communit[y]" was a group of the defendant's *peer* institutions in the sense of "physician skill and training, facilities, equipment, funding, and also the physical and financial environment of a particular medical community." *Pitts*, 167 N.C. App. at 197, 605 S.E.2d at 156.

Here, instead of testifying to the standard of care at fully accredited hospitals, Streisand testified to the standard of care at top teaching hospitals associated with a major university. We observe particularly that Defendants' contention that Streisand should have been familiar with the *community of Durham* is entirely unconvincing. It cannot be reasonably maintained that the standard of care at Duke is better approximated by comparison to community hospitals in Durham or similarly sized cities than to other renowned, "top level teaching hospitals" attached to major universities, such as UCLA and Johns Hopkins. *In the light most favorable to Plaintiff*, Streisand's testimony addressed the

applicable standard of care at Duke. *See Kerr*, 189 N.C. App. at 334, 657 S.E.2d at 922. The trial court erred in concluding otherwise. Accordingly, we reverse the directed verdict granted in favor of Defendants.

### II. *Summary judgment on battery claim*

**[2]** Plaintiff next argues that the trial court erred in granting summary judgment to Defendants on Plaintiff's battery claim. We disagree.

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. A trial court's grant of summary judgment receives de novo review on appeal, and evidence is viewed in the light most favorable to the non-moving party.

> Upon a motion for summary judgment, the moving party carries the burden of establishing the lack of any triable issue and may meet his or her burden by proving that an essential element of the opposing party's claim is nonexistent. If met, the burden shifts to the nonmovant to produce a forecast of specific evidence of its ability to make a *prima facie* case, which requires medical malpractice plaintiffs to prove, in part, that the treatment caused the injury.

*Cousart v. Charlotte-Mecklenburg Hosp. Auth.*, 209 N.C. App. 299, 302, 704 S.E.2d 540, 542-43 (citations, quotation marks, brackets, and ellipsis omitted), *disc. review denied*, 365 N.C. 330, 717 S.E.2d 375 (2011).

> Where a medical procedure is *completely* unauthorized, it constitutes an assault and battery, i.e., trespass to the person. . . . *If, however, the procedure is authorized, but the patient claims a failure to disclose the risks involved,* the cause of action is bottomed on negligence. Defendants' failure to make a proper disclosure is in the nature of malpractice (negligence) . . . .

*Nelson v. Patrick*, 58 N.C. App. 546, 550, 293 S.E.2d 829, 832 (1982) (citations omitted; emphasis added).

Before trial, Plaintiff moved for summary judgment on his battery claim. The trial court denied that motion. Defendants then orally moved for summary judgment on the same claim, and the trial court granted that motion.

**IN RE K.H.**

[226 N.C. App. 448 (2013)]

Plaintiff notes that among the evidence before the court on summary judgment were the depositions of D'Amico and a defense expert on consent, both acknowledging that D'Amico did not have Plaintiff's consent to perform an operation removing Plaintiff's second rib. We agree with Plaintiff that this evidence exists. However, Plaintiff admits he consented to a procedure which involved removal of the first rib. Plaintiff's own expert, Streisand, specifically testified that the resection of the second rather than the first rib was "a recognized complication" of the procedure and that, if it had been noticed in the recovery room immediately after surgery, it would be "a complication, but not really a breach in the standard of care." In addition, Defendants' experts on standard of care provided depositions stating that an inadvertent resection of the second rib is a reported, non-negligent complication of the surgery to which Plaintiff consented. Thus, *all* of the standard of care evidence was that the resulting event was a recognized complication of the consented-to surgical procedure. As a result, the trial court's grant of summary judgment on Plaintiff's claim of battery was proper.

REVERSED IN PART; AFFIRMED IN PART.

Judges GEER and DILLON concur.